UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NUMBER: 6:08-cv-1787-ORL-31KRS

MELISSA J. SINNI,

       Plaintiff,

vs.                                                    **DISPOSITIVE MOTION**

AARON P. CULLEN, ABSOLUTELY
MASSAGE INC., and SCOTTSDALE
INSURANCE COMPANY,

       Defendants.

_____/


**PLAINTIFF'S MOTION FOR SUMMARY  JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT**

CHARLES R. STEINBERG, P.A.
Charles R. Steinberg, Esquire
Florida Bar # 258350
csteinberg@steinbergpa.com
640 Brevard Avenue, Suite 106
Cocoa, FL 32922
321-637-1990 Telephone
321-637-1980 Facsimile
Attorney for Plaintiff

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiff, MELISSA SINNI, by and through undersigned counsel, pursuant to Rule 56(a), Federal

Rules of Civil Procedure, moves this Court for entry of Summary Judgment on the issues of Defendant

insurer, SCOTTSDALE INSURANCE COMPANY ("SCOTTSDALE"), duty to defend, duty to

indemnify and duty to reimburse defense costs, and as grounds therefore would show as follows:


**I.  INTRODUCTION**

This is an action for breach of contract regarding a property insurance policy issued by

SCOTTSDALE to the named insured, ABSOLUTELY MASSAGE INC., d/b/a Euro Day Spa

("ABSOLUTELY MASSAGE"), regarding SCOTTSDALE's refusal to defend and indemnify the named

insured as well as the Co-Defendant, AARON CULLEN ("CULLEN"), an additional insured employee,

as well as reimburse defense costs, regarding a Complaint filed by Plaintiff against them in the Circuit

Court in Orange County, Florida. (Getz Deposition, Exhibit 4).  On November 14, 2005, Plaintiff, after

she had finished her work as a massage therapist with ABSOLUTELY MASSAGE, slipped and fell on

wet mulch, while at the gate located at the back end of the property owned by ABSOLUTELY

MASSAGE. (Sinni Deposition, pages 17/25 – 18/18), (Bearden Deposition, pages 14/19-21, and 49/6-17)

and (Cullen Deposition, pages 46/21 – 47/4).  As a result of this fall, Plaintiff suffered injuries to her

wrist and neck, could no longer adequately perform her duties as a massage therapist and suffered

damages.  Subsequently, Plaintiff presented a Worker's Compensation claim with her employer,

ABSOLUTELY MASSAGE, and by letter from her counsel, Charles W. Smith, dated June 16, 2006, put

SCOTTSDALE on notice of her liability claim for damages. (Getz Deposition, Exhibit 8).

SCOTTSDALE, after conducting an investigation of Plaintiff's claim, denied coverage to its

insureds, by letter dated March 5, 2007, and in doing so, stated for its basis that Plaintiff was in the

course and scope of her employment at the time of the fall and was getting Worker's Compensation

benefits. (Getz Deposition, Exhibit 14).

In early May, 2007, Plaintiff, through her attorney, filed the initial Complaint against ABSOLUTELY MASSAGE and CULLEN alleging in part that she fell on wet mulch located on property owned by ABSOLUTELY MASSAGE, and that both CULLEN and ABSOLUTELY MASSAGE negligently maintained the mulch.  She also alleged that at the time of her fall, she was a business invitee. (Getz Deposition, Exhibit 18).

Within a week after the initial Complaint was filed in Orange County Circuit Court, Attorney Smith wrote a letter to SCOTTSDALE's independent adjuster, Tom Jones, who conducted the investigation and enclosed a copy of that initial Complaint. (Getz Deposition, Exhibit 16), (Affidavit of Charles W. Smith).  The independent adjuster, Tom Jones, had a duty to forward the initial Complaint to SCOTTSDALE. (Getz Deposition, page 104/4-10).

Insureds, ABSOLUTELY MASSAGE and CULLEN, hired defense counsel, Alfred Truesdell ("Truesdell"), to defend against the initial Complaint filed by Plaintiff.  On February 8, 2008, Truesdell sent a letter to SCOTTSDALE informing it of the initial Complaint filed by Plaintiff and thereafter, sent a copy of same to SCOTTSDALE's adjuster by letter dated February 27, 2008. (Getz Deposition, Exhibit 18).  SCOTTSDALE's adjuster acknowledged receipt of the initial Complaint in its letter to Truesdell dated March 25, 2008, and further stated that SCOTTSDALE was reviewing and evaluating the initial Complaint and would provide an answer regarding coverage and a defense in the near future. (Getz Deposition, Exhibit 18a).  Truesdell responded on April 2, 2008, to SCOTTSDALE stating that making a timely decision would be greatly appreciated. (Getz Deposition, Exhibit 19).  On April 9, 2008, SCOTTSDALE's adjuster, Pamela Aluas, informed Truesdell that the matter was referred to insurance counsel and that she hoped to have a decision in two weeks. (Getz Deposition, Exhibit 20).  Truesdell by facsimile and letter dated April 18, 2008, to SCOTTSDALE's adjuster, Pamela Aluas, again stated that SCOTTSDALE has failed and refused to provide a defense to ABSOLUTELY MASSAGE and CULLEN.  He further stated that he was previously advised by SCOTTSDALE's adjuster, Pamela Aluas, that "you would provide a response to my clients' demand for a defense in this civil suit by April 23,

2008." The letter was concluded with the statement that "If we do not receive written confirmation that a defense will be provided to my clients from your offices by 5:00 p.m. on April 23, 2008, we will construe that to mean that Scottsdale Insurance Company has decided to forgo providing a defense in this matter. I look forward to your immediate response to this correspondence." (Getz Deposition, Exhibit 21).

Truesdell, who informed SCOTTSDALE by his letter dated February 8, 2008 (Getz Deposition, Exhibit 17), that its insureds had the option to enter into a consent judgment agreement with the Plaintiff and assign to her the insured's rights against SCOTTSDALE, in fact, did so when on May 15, 2008, his clients executed a document entitled Assignment, Settlement Agreement and Covenant Not to Execute ("Settlement Agreement") which was approved by the Circuit Judge who entered a Consent Judgment on May 21, 2008. (Getz Deposition, Exhibit 3).

The next written correspondence Truesdell received on behalf of SCOTTSDALE was a June 18, 2008, letter from Attorney, Jake Williams, stating that in a telephone conversation on May 29, 2008, SCOTTSDALE's adjuster, Pamela Aluas, informed him that SCOTTSDALE would provide a defense to its insureds with a "complete reservation of rights". (Getz Deposition, Exhibit 22).

Thereafter, the current litigation was commenced against SCOTTSDALE for the purpose of enforcing the Consent Judgment entered herein and reimburse defense costs.  After removal of the action to the Middle District Court by SCOTTSDALE, SCOTTSDALE filed a Counter-Claim for declaratory relief requesting that this Court determine the issue of coverage and SCOTTSDALE's duty to defend the underlying litigation.

## II. ISSUES TO BE DECIDED BY THE COURT

The issues to be decided by the Court are as follows

A.      The Effect of the Consent Judgment on the Claimant, Insureds and Insurance Company.

B.      Whether or Not the Allegations of the Initial Complaint Created a Duty on Behalf of SCOTTSDALE to Provide a Defense to its Insureds, ABSOLUTELY MASSAGE and CULLEN, and if

so, Whether or Not SCOTTSDALE Then Owed its Insureds Reimbursement of Defense Costs and

Attorneys' Fees Expended.

C.      Whether or Not SCOTTSDALE Owed its Insureds Coverage under the Policy Issued and

Duty to Indemnify.

D.      Whether or Not the Policy Exclusions and Affirmative Defenses Asserted by

SCOTTSDALE Allow it to Avoid Providing a Defense and Indemnity to its Insureds.

E.      Whether or Not SCOTTSDALE Is Estopped from Denying Coverage When it Billed and

Collected a $2,500.00 Deductible from the Insured.


## III.  UNCONTROVERTED FACTS

The factual matters as set forth in the INTRODUCTION for purposes of this Motion are

undisputed and can be accepted as true by the Court when deciding the issues presented herein.  There

are additional undisputed facts relevant to this matter which are as follows:

1.      SCOTTSDALE admits that it issued policy number CPS0743003 ("Policy") to

ABSOLUTELY MASSAGE effective September 16, 2005, through September 16, 2006, a copy of which

is attached as Exhibit 1 to SCOTTSDALE Answer and Affirmative Defenses to the Amended Complaint

and Counter-Claim for Declaratory Relief.

2.      On November 14, 2005, CULLEN was manager and an employee for ABSOLUTELY

MASSAGE whose duties included maintaining the exterior grounds and mulch walkway owned by

ABSOLUTELY MASSAGE. (Bearden Deposition, pages 16/25 – 17/3).

3.      CULLEN maintained the mulch and grounds on the walkway on which Plaintiff fell.

(Sinni Deposition, pages 51/5-17), (Bearden Deposition, pages 61/25 – 17/3), (Cullen Deposition, pages

45/11 – 46/23).

4.      ABSOLUTELY MASSAGE has spent over $50,000.00 in costs and attorney's fees in

defense of the suit brought by Plaintiff. (Bearden Deposition, page 50).

5.    ABSOLUTELY MASSAGE paid $2,500 to SCOTTSDALE after being billed for deductible pursuant to the Policy. (Bearden Deposition, pages 52/11 – 56/2), (Getz Deposition, pages 134/1 – 135/25).

6.    According to the Corporate Representative of SCOTTSDALE (Getz) produced in this case, ABSOLUTELY MASSAGE was billed for the deductible in accordance with endorsement UTS-128s which states in party that the insured shall promptly reimburse SCOTTSDALE for the deductible if that amount is paid to effect a settlement of any claim or suit. (Getz Deposition, pages 134/1 – 135/25.

## IV. RELEVANT POLICY PROVISIONS

The relevant policy provisions with regard to the issues presented herein are as follows:

1.

**Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

2.    2. Exclusions
      This insurance does not apply to:

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

   (a) Employment by the insured; or

   (b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

3.    2. Each of the following is also an insured:

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

   (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

4.      Duties In the Event of Occurrence, Offense, Claim or Suit:

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

5.      Definitions:

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

6.      **13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

7.      Bodily Injury...Liability Deductible Endorsement

---

**SCOTTSDALE INSURANCE COMPANY®**

ENDORSEMENT NO._____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| CPS0743003 | 09/16/2005 | EURO DAY SPA | 09011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### OPTIONAL PROVISIONS ENDORSEMENT

The following special provisions (indicated by an "X") apply to this policy.

#### SCHEDULE

☒ Bodily Injury, Property Damage, Personal Injury and Advertising Injury Liability Deductible Endorsement

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| Bodily Injury Liability | $ 2,500 | per claimant |
| Property Damage Liability | $ 2,500 | per claimant |
| Personal and Advertising Injury Liability | $ NONE | per claimant |

☒ Service of Suit Clause

Service of Process will be accepted by: COMMISSIONER OF INSURANCE
200 EAST GAINES STREET, TALLAHASSEE, FL 32399 , and

Service of Process will be mailed to: RECIPIENT NOT REQUIRED

☒ Minimum and Advance Premium Endorsement
Minimum Premium _____ 100 _____ %.

☒ Minimum Earned Cancellation Premium
Minimum Earned Cancellation Premium _____ 25.00 _____ % of the advanced premium.

GLS-94s (12-99)

### BODILY INJURY, PROPERTY DAMAGE, PERSONAL INJURY AND ADVERTISING INJURY LIABILITY DEDUCTIBLE ENDORSEMENT

This endorsement modifies insurance provided under the following:

#### COMMERCIAL GENERAL LIABILITY COVERAGE PART

APPLICATION OF ENDORSEMENT

Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury," "property damage," "personal and advertising injury," ("personal injury" and "advertising injury") however caused:

NO LIMITATIONS

applicable to such coverages, and the Limits of insurance applicable to Each Occurrence or offense for such coverages will be reduced by the amount of such deductible. Aggregate Limits for such coverages shall not be reduced by the application of such deductible amount.

2.  The deductible amounts apply to damages and all legal and loss adjustment expenses.

3.  The deductible amounts stated in the Schedule above apply, respectively:

    a.  Under the Bodily Injury Liability Coverage to all damages because of "bodily injury" sustained by one person;

    b.  Under Property Damage Liability Coverage to all damages because of "property damage" sustained by one person, any organization or association; or

1.  Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and Advertising Injury Liability (Personal Injury and Advertising Injury) Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule of this endorsement as

    c.  Under Personal and Advertising Injury Liability (Personal Injury and Advertising Injury) Coverages to all damages sustained by one person as the result of any one "occurrence" or offense.

4.  The terms of this insurance, including those with respect to our right and duty to defend any "suits" seeking those damages and your duties in the event of an "occurrence," offense, claim or "suit," apply irrespective of the application of the deductible amount.

5.  We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

---

## V.  DISCUSSION OF THE ISSUES

**A.**     **The Effect of the Consent Judgment on the Claimant, Insureds and Insurance Company.**

SCOTTSDALE's insureds entered into a Consent Judgment with the Plaintiff after SCOTTSDALE was duly notified of Plaintiff's initial Complaint and failed, after being on notice of same for greater than at least three and one-half months, to offer to provide a defense. (It is uncontroverted that SCOTTSDALE was notified of the initial law suit on February 7, 2008; that SCOTTSDALE first <u>verbally</u> offered to provide a defense with a <u>complete reservation of rights</u> on May 29, 2008, and that SCOTTSDALE first offered in writing to provide a defense, with a reservation of rights, by letter dated June 18, 2008, after the Settlement Agreement was fully executed by all parties on or before May 15, 2008.)

A Consent Judgment is a judicially approved contract, rather than a judgment entered after litigation, but it is a judgment nonetheless and entitled to the same preclusive, res judicata effect as any other judgment issued by a Florida Court.  <u>Arrieta-Gimeneze v. Arrieta-Negron</u>, 551 So.2d 1184 (Fla. 1989)

Settlement Agreements of the type executed by the parties herein are known as "Coblentz Agreements" based on the one used in the case of <u>Coblentz v. American Surety Company of New York</u>, 416 F.2d 1059 (5th Cir. 1969).  <u>Coblentz, supra</u> relies on the general rule that if an insurer wrongfully refuses to defend its insured, the insured is entitled to consent to entry of a judgment that could be satisfied only from public liability insurance policies covering him at the time of incident rather than from his own personal assets.  Use of Coblentz Agreements were first officially approved by Florida Courts in the case of <u>Steil v. Florida Physicians' Insurance Reciprocal</u>, 448 So.2d 589  (Fla. 2nd DCA 1984), and are now firmly established under Florida law as agreements enforceable against the insured's insurance carrier.  See <u>Gallagher v. Dupont</u>, 918 So.2d 342 (Fla. 5th DCA 2005).  However, to enforce a Coblentz Agreement (Consent Judgment) against the insurer, the claimant must demonstrate: (1)

coverage, (2) a wrongful refusal to defend, and (3) that the settlement was reasonable and made in good faith. Ahern v. Odyssey Re (London) Ltd., 788 So.2d 369 (Fla. 4th DCA 2001).

There is no dispute among the parties that the agreement utilized in this case is in fact, a "Coblentz Agreement" which was reduced to a Consent Judgment. The agreement itself states that it should be construed according to the case law cited in Steil, supra and Shook v. Allstate Insurance Company, 498 So.2d 498 (Fla. 4th DCA 1986).

Another effect of the Coblentz Agreement is that an insurer, who improperly refuses to defend its insured, cannot rely upon the "No Action" clause to defeat a claim predicated upon the insured's settlement. Steil, supra. In other words, the insurer cannot complain that the insured did not consult it or otherwise include it in settlement discussions after the insurance carrier improperly fails to defend its insured.

Additionally, the insurance carrier cannot "re-litigate" defenses that it could have asserted to the initial Complaint, had it properly defended its insured. Florida law has held that when a Coblentz Agreement is entered into as a result of the insurer's improper denial of a defense, the insurer is not entitled to raise any defense to the claimant's claim that it could have raise in the civil action. Gallagher, supra, citing to Wright v. Hartford Underwriters Insurance Company, 823 So.2d 241 (Fla. 4th DCA 2002).

Thus, the remaining issues set forth herein will be discussed in light of the procedural and substantive facts of this case in order to determine whether or not the Consent Judgment is enforceable against SCOTTSDALE.

**B.     Whether or Not the Allegations of the Initial Complaint Created a Duty on Behalf of Scottsdale to Provide a Defense to its Insureds, Absolutely Massage and Cullen, and If So, Whether or Not Scottsdale Then Owed its Insureds Reimbursement of Defense Costs and Attorneys' Fees Expended.**

Florida law with regards to the duty to defend is set forth in the Middle District of

Florida's Opinion of <u>Travelers Indemnity Company of Illinois v. Royal Oak Enterprises</u>, 344 F.Supp.2d

1358 (M.D. Fla. 2004) which states the following:

> "It is well settled in Florida, that a liability insurer's duty to defend third-party claims against its insured is distinct from, and broader than, its duty to indemnity.  Whether the duty to defend arises depends solely on the allegations contained in the complaint against the insured, and any doubt about the duty to defend must be resolved in favor of the insured.  Moreover, if the complaint alleges covered and non-covered claims, the insurer's duty to defend is triggered and the insurer is obligated to defend the entire suit.  This is true even where the facts later show there is no coverage.  The insurer's duty to defend is not affected by the merits of the third party's claim or the likelihood that the claim will ultimately be successful; an insured is entitle to a defense by its insurer against even the most frivolous suit, so long as it described an occurrence within coverage."

A review of the initial Complaint filed by Plaintiff in this case alleges facts which

amount to no more than a slip and fall on insured's property by a business invitee.  There is no mention

whatsoever that Plaintiff, prior to the actual time of the slip and fall, was working at the insured's

business as a massage therapist, nor were there any allegation that she submitted a Worker's

Compensation claim arising out of this incident.  Additionally, the Complaint also alleged that CULLEN

is an employee of the named insured and negligently maintained the surface (mulch) upon which Plaintiff

slipped and fell.  Clearly, the test to determine whether or not an insured should be provided a defense is

to review the allegations of the complaint and if any of them fall within the coverage provided by the

insurance policy, then the insurer should provide a defense.

There can be no doubt that the allegations of the initial Complaint taken at face value,

would trigger SCOTTSDALE's duty to defend not only the named insured of the Policy

(ABSOLUTELY MASSAGE) but also, CULLEN, as an employee of the named corporate insured, who

is neither an officer, director or owner of the named insured.

As is further stated in <u>Travelers Indemnity Company of Illinois, supra</u>, there is nothing

on the face of the initial Complaint which revealed the applicability of an exclusion and the fact that the

negligence claim may well have been subject to the affirmative defense supplied by Florida Worker's

Compensation Law does not relieve (Travelers) of the duty to come forward and at least raise that

defense.

SCOTTSDALE was given ample opportunity to provide a defense to the initial

Complaint, having been put on notice of same first by Plaintiff's attorney, Mr. Smith (by letter dated May

11, 2007) and secondly by letter from its insured's private attorney, Mr. Truesdell, dated February 7,

2008.  Although SCOTTSDALE did not formally refuse to provide a defense to the initial Complaint

once notified of the law suit, it did not provide a written offer to provide a defense until June 18, 2008,

greater than one month after the Settlement Agreement was executed, over four months after being

notified by attorney Truesdell of the law suit and greater than one year after its independent adjuster was

notified by attorney Smith of the initial law suit; yet said defense was only with a complete reservation of

rights.  An insurer cannot sit on its hands after notice of litigation against an insured without the

probability that it will be bound by a Consent Judgment assuming that there is no collusion or fraud.  See

Vanguard Insurance Company v. Townsend, 544 So.2d 1153 (Fla. 5th DCA 1989).  It should also be

noted that the delayed offer to provide a defense by SCOTTSDALE is in effect, no offer at all since the

insured is under no obligation to accept a defense from its insurance carrier with a "complete reservation

of rights" and can reject it without jeopardizing the right to seek indemnification from the insurer for

liability.   See Travelers Indemnity Company of Illinois, supra, see also BellSouth Telecommunications,

Inc. v. Church & Tower of Florida, Inc., 930 So.2d 668 (Fla. 3rd DCA 2006).

There should be no question that the allegations of the initial Complaint, if proved, set

forth facts which would be covered by the Policy, and thus, a defense should have been provided by

SCOTTSDALE.  (See Corporate Representative's Deposition, Getz, who admitted that the Policy would

cover premises liability for general invitees and all other things being equal, if a customer would have

had the exact same thing happen to them that happened to Plaintiff, SCOTTSDALE would have provided

a defense and indemnity. [pages 26/14 – 27/9]).  SCOTTSDALE failure to timely provide a defense

when notified not once, but several times, of the law suit is inexcusable.  SCOTTSDALE's failure to

timely provide a defense, when demanded by its insured, should be deemed as conclusive as if it stated

its refusal to do so.  In fact, SCOTTSDALE still waited exactly two months after it received the April 18,

2008, letter from its insured's attorney, to offer to provide a defense, with a reservation of rights, even

after given a time limit by the insured to respond by April 23, 2008.  SCOTTSDALE's failure to timely

respond  by April 23, 2008, as requested by its insured's should, without question, be construed to be a

refusal to provide a defense.  Thus, SCOTTSDALE's actions in this case amount to an improper refusal

to provide a defense to its insured which coupled with the existence of a Coblentz Agreement, then

results in the effects it as set forth above.

       The initial consequence of SCOTTSDALE's wrongful refusal to defend was the

unwarranted and unnecessary expenditure of attorney's fees and costs by its insured, ABSOLUTELY

MASSAGE, to defend the action.  The law is well established that when an insurer unjustifiably refuses

to defend its insured, the insurer is liable to the insured for the reasonable attorney's fees and other

expenses incurred in defending the action brought by the third party. See Nationwide Mutual Fire

Insurance Company v. Beville, 825 So.2d 999 (Fla. 4th DCA 2002).  Furthermore, the insurer would be

obligated to reimburse the insured for all costs of defense from the inception of the suit, even if it is

found that it did not receive notification of same until several months later.  The delay in giving notice of

the suit had no effect whatsoever on the carrier's contractual duty to defend this suit because the carrier

refused an unconditional defense and ceded the defense to the insured.  Failure of the carrier to offer a

proper defense upon receipt of notices waives any defect in delaying notice.  See Nationwide Mutual Fire

Insurance Company, supra.

       Finally, SCOTTSDALE cannot show any prejudice from the alleged failure by the insured to

send suit papers earlier to it.  In conclusion, SCOTTSDALE's failure to properly provide a timely

defense to the Plaintiff's claim requires it to, at a minimum, reimburse all defense costs incurred by its

insured from the inception of the law suit.  According to ABSOLUTELY MASSAGE, President, Lois

Bearden, the defense costs, as of the date of her deposition, exceeded $50,000.00.  Since the insured's

have also assigned the right to collect defense costs to Plaintiff, she is entitled to collect them on her

behalf plus receive an award of attorney's fees pursuant to §627.428, Florida Statute, based upon

SCOTTSDALE's breach of its insurance agreement to provide a defense to its insured.


C.      Whether or Not Scottsdale Owed its Insureds Coverage under the Policy Issued and

Duty to Indemnify.

        The opinion in the Travelers Indemnity Company of Illinois, supra, succinctly and fully

sets forth the applicable Florida law regarding determination of coverage and indemnity when a

settlement is achieved pretrial, as follows:

> "While the duty to defend is broad and must be determined solely by the
> allegations in the complaint against the insured, the duty to indemnify is
> more narrow and must be measured by the facts adduced at trial or
> developed through discovery taken during the underlying tort action.
> (Citing to Farrer v. US Fidelity and Guarantee Company, 809 So.2d 85,
> 88 (Fla. 4th DCA 2002)."  Therefore, notwithstanding the allegations
> against the insured, if the facts show that the insured's liability stems
> from a claim for which no coverage is provided under the policy, the
> insurer owes no duty of indemnification. This premise holds true even
> where, as here, the insured's liability was arrived at through a settlement
> of the action against the insured, because a settlement does not, by itself,
> obligate the insurer to pay for a non-covered claim. Instead, the insurer's
> duty to indemnify a settlement obligation must be measured by the facts
> "inherent in the settlement" or, in other words, the facts extant at the
> time the settlement was reached. (Citing to Hatmaker v. Liberty Mutual
> Fire Insurance Company, 308 F.Supp.2d 1308, 1313 (M.D. Fla. 2004)
> (Conway, J.).  See also Bank West v. Fidelity and Deposit Company of
> Maryland, 63F3rd 974, 981(10th Circuit 1995); Travelers Insurance
> Company v. Waltham Industry or Industrial Labs Corporation, 883 F.2d
> 1092, 1099 (First Circuit 1989)."

        Once again, review of the undisputed facts "inherent in the settlement" or extant at the

time of the settlement was reached shows that there would be liability coverage under the general

insuring clause of this policy which would extend to both the named insured, ABSOLUTELY

MASSAGE, as well as the Co-defendant and employee, CULLEN. Plaintiff maintains that coverage

would inure to her benefit even when considering all the policy exclusions and affirmative defenses

asserted by SCOTTSDALE, which will be discussed in more detail below. However, it is clear that the undisputed facts, developed in the initial litigation and reiterated during Discovery in this case, demonstrate that Plaintiff, suffered a "bodily injury" arising out of an "occurrence" as defined by the Policy for which both insureds would be legally obligated. CULLEN was, without question, an employee of the named insured when the "occurrence" happened and was not an "executive officer" as defined by the policy, since he was not listed as such in the charter, constitution, bylaws, or any other similar governing document of the named insured. (Getz Deposition, Exhibit 22, Attached Deposition of Aaron Cullen, page 9 wherein he states that he has no ownership interest nor is he listed as an executive officer of the corporation).  (Bearden Deposition, pages 16/25 – 17/3, Cullen was a maintenance manager).

       The undisputed facts also are that CULLEN maintained and supervised the exterior grounds of the property owned by the named insured, which also included the mulch walkway upon which the Plaintiff suffered her slip and fall injury. (Plaintiff's Exhibit 1: CULLEN's Answers to Sworn Interrogatories from the initial law suit attached to his deposition dated August 24, 2009). Thus, CULLEN could initially be considered an insured since the maintenance of the mulch walkway was within the scope of his employment for the named insured. In addition, since the "occurrence" to Plaintiff happened <u>after</u> she literally clocked out from work, CULLEN would be insured for bodily injuries to her even if she were considered a "co-employee" since she was not in the course and scope of her employment when she fell on the mulch. The fact that she received workers compensation benefits is not at all relevant to the scope of her employment for tort purposes which is much more narrowly construed. See, for example <u>Sussman v. Florida East Coast Properties, Inc.</u>, 557 So.2d 74 (Fla. 3rd DCA 1990). Thus, it can be concluded that CULLEN, is defined under the policy as an employee insured who would be insured for the bodily injury of a co-employee (Plaintiff) since at the time of her injury she was <u>not</u> in the course or scope of her employment or performing duties related to the conduct of the business of the named insured, which in the instance, was a spa offering massage therapy, skin care and other beauty services to customers.

In conclusion, absent any application of the exclusions and affirmative defenses set forth by SCOTTSDALE, there would be coverage under the policy to both CULLEN and ABSOLUTELY MASSAGE arising out of the "occurrence" to Plaintiff.

**D.      Whether or Not the Policy Exclusions and Affirmative Defenses Asserted by SCOTTSDALE Allow it to Avoid Providing a Defense and Indemnity to its Insureds.**

After SCOTTSDALE was notified of the fall by Plaintiff, and conducted an investigation, it concluded in the letter dated May 5, 2007, to its insureds that it had sufficient information developed from the investigation to deny coverage on the basis of the exclusions set forth under paragraphs 2.d. and e. (Worker's Compensation and Similar Laws and Employers Liability) of the Policy. (Getz Deposition, Exhibit 14).  Once this litigation ensued, SCOTTSDALE's attorneys asserted numerous other exclusions contained within the Errors and Omissions portions of the Policy as well as other affirmative defenses which incorporated Policy clauses regarding the insured's duties after loss and the "no action clause".  For purposes of this discussion, no coverage is sought under the Errors and Omissions portions of the SCOTTSDALE Policy so there would be no argument with regard to those affirmative defenses asserted by SCOTTSDALE. Rather, SCOTTSDALE's affirmative defenses pertinent to the discussion of this Motion incorporate the exclusions initially asserted by it in the denial letter dated March 5, 2007, to its insured, as well as alleged failure by is insured to comply with duties in the event of an occurrence and the "no action" clause of the Policy.  Additional affirmative defenses assert that CULLEN is not an insured under the terms and conditions of the policy with regard to the allegation asserted by Plaintiff in her initial Complaint against ABSOLUTELY MASSAGE.

**The Workers Compensation and Similar Laws Exclusion**

SCOTTSDALE's wrongful refusal to provide a defense to its insureds eliminates its right to assert any affirmative defenses to the Plaintiff's claim that it could have raised in the initial civil action. See Gallager, supra. Worker's compensation immunity from civil litigation is such an affirmative

defense, and therefore, SCOTTSDALE's wrongful denial of defense precludes it from asserting this particular defense in this action. Wright, supra. Furthermore, the fact that Plaintiff did obtain a Workers Compensation settlement after the Settlement Agreement and Consent Judgement in this case does not invoke this exclusion or the workers compensation exclusion either.  Plaintiff specifically excluded from the Workers Compensation settlement any causes of action against the employer or CULLEN which would arise out of this tort litigation.  In addition, the Consent Judgment achieved in the underlying civil action is not "an obligation imposed by Workers Compensation", rather, it arose from the claims in the civil action in the settlement agreement among Plaintiff, ABSOLUTELY MASSAGE and CULLEN, none of which involve obligations imposed by the Workers Compensation law. See Wright, Supra. Furthermore, Plaintiff sued both ABSOLUTELY MASSAGE and CULLEN regarding their duties as a land holder and manager of the property and thus, even if the land owner is also an employer, no Workers Compensation immunity would apply.  See US Holdings, Inc., v. Belance, 922 So.2d 240 (Fla. 3rd DCA 2006).

For the above reasons, the Workers Compensation and similar laws exclusion would not apply to deny coverage in this case.

**Employers Liability Exclusion**

The employers liability exclusion would also not apply in this case, since at the time bodily injury occurred to Plaintiff, she was not performing duties related to the conduct of the insured's business, nor did it arise out of the course and scope of her employment with the insured. As previously discussed, Plaintiff's cause of action arose out of the insureds' (both CULLEN and ABSOLUTELY MASSAGE) negligence in maintenance of the property causing Plaintiff to fall. This exclusion, known as the "standard employee exclusion" would not apply to co-employees such as CULLEN.  See Great Global Assurance Company v. Shoemaker, 599 So.2d 1036, 1039 (Fla. 4th DCA 1992). Once Plaintiff "clocked out" from her employment with the insured, ABSOLUTELY MASSAGE, the acts from that point on were not, from a tort perspective, committed within the course and scope of her employment

with the insured. See <u>Sussman, supra</u>.  Certainly, since her scope of employment with the insured was that of a massage therapist, slipping and falling on wet mulch while walking to her car to leave cannot at all be argued to be performing duties related to the conduct of the insured's business which is in the nature of a health and beauty spa.  Finally, the clause within the exclusion which states that it applies "whether the insured may be liable as employer or in any other capacity" would not apply to preclude coverage since, once again, Plaintiff was not injured in the course and scope of her employment or performing duties related to the conduct of the insured's business.

The Florida Supreme Court has held that exclusionary clauses are construed even more strictly against the insurer then coverage clauses.  <u>Fayad v. Clarendon National Insurance Company</u>, 899 So.2d 1082 (Fla. 2005).  The Court states "<u>thus, the insurer is held responsible for clearly setting forth what damages are excluded from coverage under the terms of the policy</u>." (Emphasis added).  Therefore, the insurer (SCOTTSDALE) has the burden to prove the application of any exclusion in the denial of claim as opposed to the insured having to prove that the exclusion does not apply.  See <u>Widdows v. State Farm Florida Insurance Company</u>, 920 So.2d 149 (Fla. 5th DCA 2006).  If an exclusionary clause is uncertain in its in the meaning then it is construed in favor of the insured.  See <u>State Farm Mutual Automobile Insurance Company v. Pridgen</u>, 498 So.2d 1245 (Fla. 1986).

Therefore, based on the law as applied to the facts in this case, neither the employers liability nor the Worker's Compensation or similar laws exclusion would apply to preclude coverage in this case.

**"No Action Clause"**

If the insurance company improperly refuses to defend its insured, the carrier cannot rely upon the "No Action" clause to defeat a claim predicated upon the insureds' settlement.  See <u>Gallagher, supra</u>.  Thus, SCOTTSDALE cannot in this case, avail itself of this clause to defeat coverage to the insureds, since it did not enter a defense for them when it should have after the examination of the initial Complaint filed by the Plaintiff.

**"Duties in The Event of Occurrence, Offence, Claim or Suit"**

The insureds satisfactorily cooperated with the investigation of the claim after it was reported. According to SCOTTSDALE's adjuster, Doug Stutheit, the insureds were cooperative and assisted in the investigation of the claim. (Stutheit Deposition, pages 16/21 – 17/7; 29/20 – 30/2; 32/21 – 33/7). In fact, SCOTTSDALE asserted in its May 5, 2007, coverage denial letter that it had sufficient facts to deny the claim.

After the litigation was filed, SCOTTSDALE was forwarded a copy of the initial Complaint, once by attorney Smith to its independent adjuster on or about May 11, 2007 (See Affidavit of Charles W. Smith) and secondly, on or about February 27, 2008, by the insureds' independent attorney Truesdell. SCOTTSDALE has provided no evidence whatsoever that it suffered any prejudice due to an alleged late "notification" by either the insured or the claimant of Plaintiff's initial law suit. See Nationwide, supra. SCOTTSDALE took over four months after receiving a copy of the initial Complaint from its insureds to decide that it would provide a defense "with a complete reservation of rights"; when all it had to do was examine the initial Complaint in order to make that determination.

In conclusion, there is no evidence whatsoever which would support the application of the exclusions or affirmative defenses asserted by SCOTTSDALE to deny coverage to the Plaintiff in this case.

E.     **Whether or Not SCOTTSDALE is Estopped from denying coverage when it billed and collected a $2,500.00 deductible from the insured.**

When SCOTTSDALE billed and collected the deductible from its insured pursuant to the terms and conditions of the "Bodily Injury, ... Liability Deductible Endorsement", it acted totally inconsistent with its assertions that the Policy provided no coverage for the Plaintiff's claim. SCOTTSDALE's acts contrary to a coverage denial would constitute a waiver of SCOTTSDALE's denial of coverage and thus is estopped from denying same. SCOTTSDALE's billing and collecting an

insurance deductible is analogous to situations where insurers accept premiums from policy holders after acquiring actual or constructive knowledge of facts which would justify voiding the policy.  In such a situation, "any unequivicable act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof." (See <u>Johnson v. Life Insurance Company of Georgia</u>, 52 So.2d 813 (Fla. 1951) cited with approval in <u>Wimberg v. Chandler</u>, 986 F.Supp. 1447 (M.D. Fla. 1997).

Once SCOTTSDALE discovered during the Getz deposition that it billed its insured for this "liability" deductible, it immediately forwarded a refund check of the deductible to the insured in an attempt to "unring the bell".  However, once done cannot be undone.

In conclusion, Plaintiff would maintain that SCOTTSDALE's acts in this regard by itself, confirm coverage for Plaintiff's claim, since the application of the deductible can only be done once a settlement has been tendered by the insurer to claimant.

**VI. CONCLUSION**

For all the above reasons, Plaintiff requests this Court grant her Motion for Summary Judgment and in doing so, order that SCOTTSDALE improperly denied a defense and coverage to its insureds.  Furthermore, Plaintiff would request this Court order SCOTTSDALE to pay the defense costs of the insureds.  Finally, Plaintiff would request this Court reserve for determination the issue regarding the reasonableness of the settlement.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 1st day of October, 2009, I electronically filed the foregoing with  the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Julie K. Linhart, Esquire 100 South Ashley Drive, Suite 1900, Tampa, Florida 33602, julie.linhart@phelps.com, attorney for Defendant, Scottsdale Insurance Company; Al Truesdell, Brown, Garganese, Weiss & D'Agresta, 111 North Orange Avenue, #2000, Orlando, Florida 32802-2873,

atruesdell@orlandolaw.net, attorney for Absolutely Massage, Inc., and Cullen; and Donald Van

Dingenen, Esquire, 2705 West Fairbanks Avenue, Suite 100, Winter Park, Florida 32789,

anthonybvd@embarq.com, Co-Counsel for Plaintiff; on the above-referenced date.

<div style="margin-left:40%">

CHARLES R. STEINBERG, P.A.

By:  *s/ Charles R. Steinberg*
    Charles R. Steinberg, Esquire
    Florida Bar # 258350
    csteinberg@steinbergpa.com
    640 Brevard Avenue, Suite 106
    Cocoa, FL 32922
    321-637-1990 Telephone
    321-637-1980 Facsimile
    Attorney for Plaintiff

</div>