## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MELISSA J. SINNI,

      **Plaintiff,**

                              **CASE NO.: 6:08-CV-01787-GAP-KRS**

**vs.**

**AARON P. CULLEN, a Florida Resident,**
**ABSOLUTELY MASSAGE, INC., d/b/a Euro**      **DISPOSITIVE MOTION**
**Day Spa and Salon, a Florida corporation, and**
**SCOTTSDALE INSURANCE COMPANY,**

      **Defendants.**

_____/

## DEFENDANT/COUNTER-PLAINTIFF SCOTTSDALE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON THE COVERAGE ISSUES AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 56 and Middle District Local Rules, Defendant/Counter-Plaintiff, Scottsdale Insurance Company (hereinafter "Scottsdale"), by and through counsel, moves for summary judgment as a matter of law.  Because no genuine issue as to any material fact exists and the coverage issues regarding defense and indemnity can be decided as a matter of law, summary judgment is appropriate.  In support of Scottsdale's Motion for Summary Judgment, Scottsdale states as follows:

### SUMMARY OF THE ARGUMENT

This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201 for the purposes of determining the rights and obligations, if any, relative to an insurance policy.  An actual, immediate controversy exists among the parties regarding whether coverage is afforded under Policy No. CPS0743003 (the "Policy") issued by Scottsdale to Absolutely Massage d/b/a Euro Day Spa and Salon ("Absolutely Massage"), effective September 16, 2005, to September 16, 2006, for the claims and alleged damages that are the subject of the lawsuit styled, *Sinni v.*

*Cullen, et. al.*, Case No. 07-CA-5165 39L, filed in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida (the "Underlying Lawsuit").  The claims and damages that are the subject of the Underlying Lawsuit arise out of an alleged slip and fall incident resulting in injury to Melissa J. Sinni ("Sinni"), an employee of Absolutely Massage, while she was leaving work at Absolutely Massage on November 14, 2005.

Scottsdale had no duty to defend or indemnify Absolutely Massage or Cullen in the Underlying Lawsuit because the Underlying Lawsuit does not involve "bodily injury" or "property damage" caused by an "occurrence" to which the insurance of the Policy applies or damages as a result of an "error or omission" to which the Policy applies.  Even if Coverage A of the Commercial General Liability (CGL) Coverage or the Errors and Omissions (E&O) Coverage could be implicated by Sinni's claims against Absolutely Massage and Cullen, the Workers' Compensation and Similar Laws Exclusions and Employers' Liability Exclusions would preclude coverage for this loss.  Further, even if the Policy could have afforded any coverage for this loss, which is denied, Absolutely Massage and Cullen's late notice of the Underlying Lawsuit and agreement to enter into a *Coblentz*[1] agreement and $300,000 consent judgment was breached the conditions of the Policy, vitiating coverage, if any, under the Policy.

## UNDISPUTED FACTS

1.     Scottsdale issued Policy No. CPS0743003 (the "Policy") to Absolutely Massage with CGL Coverage and E&O Coverage subject to the terms, conditions, limitations, definitions, and exclusions set forth therein. A copy of the Policy is attached hereto as **Exhibit "1"** and incorporated herein. The Policy includes CGL Coverage for Bodily Injury and Property Damage Liability with a limit of $1 million any one occurrence/$2 million general aggregate, subject to a

---

[1] *Coblentz c. Am. Sur. Co. of New York*, 416 F. 2d 1059 (5th Cir. 1969).

$2,500 deductible per claimant for bodily injury liability. (*See* Ex. 1). The Policy also includes E&O Coverage with a limit of $1 million each claim/$2 million aggregate. *Id.*

2.      On or about May 2, 2007, Plaintiff Sinni brought suit against Aaaron Cullen ("Cullen") and Absolutely Massage in the Underlying Lawsuit. [D.E. 5]. A copy of the original Complaint against Cullen and Absolutely Massage dated May 2, 2007 is attached hereto as **Exhibit "2"** and incorporated herein.

3.      On May 21, 2008, the original litigation/Complaint in the Underlying Lawsuit [D.E. 2] against Cullen and Absolutely Massage was concluded by entry of a $300,000 consent judgment against Cullen and Absolutely Massage and assignment of rights to Plaintiff Sinni. A copy of the Settlement Agreement, Assignment of Rights, Consent Judgment, and Order on the Consent Judgment are attached hereto as composite **Exhibit "3"** and incorporated herein.

4.      On or about August 7, 2008, Sinni amended her Complaint to include Scottsdale as a defendant in the Underlying Lawsuit. [D.E. #5]. The Amended Complaint dated July 7, 2008 is the one against Scottsdale in this action. [D.E. #1]. Scottsdale removed this action to federal court, and the court realigned the parties in this action. [D.E. #19].

5.      In this action, Sinni, as an assignee of the rights of Defendants Cullen and Absolutely Massage, is seeking recovery of/coverage for the $300,000 consent judgment in the Underlying Lawsuit, prejudgment interest, and fees and costs (both those of Cullen and Absolutely Massage in the Underlying Lawsuit and Sinni in this action) from Scottsdale. This Court has bifurcated the coverage issues from the issue of damages/reasonableness of the consent judgment. [D.E. # 50].

A.      **November 14, 2005, Slip and Fall Incident**

6.      On November 14, 2005, Sinni was a massage therapist and employed by

3

Absolutely Massage, a spa.  A copy of the July 31, 2009 deposition of Sinni is attached as **Exhibit "4"** and incorporated herein. *See also* D.E. #40, April 6, 2006 deposition of Sinni.  A copy of Sinni's answers to Defendants' First Set of Interrogatories dated September 27, 2007, in the Underlying Lawsuit are attached hereto as **Exhibit "5"** and Sinni's answers to Defendant/Counter-Plaintiff's First Interrogatories dated February 4, 2009, are attached hereto as **Exhibit "6"** and are incorporated herein.

7.     On November 14, 2005, Sinni worked at Absolutely Massage and, while leaving work at Absolutely Massage, allegedly slipped and fell on wet mulch while walking through a gate between Absolutely Massage's property and a parking lot owned by Calvary Church. (*See* Ex. 4; Ex. 5, ¶7-9; Ex. 6, ¶9).

8.     On November 14, 2005, and at all times pertinent, Lois Bearden was the owner of Absolutely Massage.  A copy of the July 31, 2009 deposition of Lois Bearden is attached as **Exhibit "7"** and incorporated herein. (*See* Ex. 7).

9.     On November 14, 2005, and at all times pertinent, Aaron Cullen was the general manager of Absolutely Massage.  A copy of the August 24, 2009 deposition of Aaron Cullen is attached as **Exhibit "8"** and incorporated herein.  Mr. Cullen oversaw the daily management of the spa and the exterior maintenance of the spa building and grounds. (*See* Ex. 8). *See also* D.E. #40, April 6, 2006 deposition of Cullen.

10.     Sinni claims that she sustained injuries to the right side of her body, neck, and wrist arising from the November 14, 2005 incident. (*See* Ex. 4; Ex. 5, ¶11; Ex. 6, ¶7).

**B.     Workers' Compensation Claim**

11.     At the time of the November 14, 2005 incident, Absolutely Massage had a Workers Compensation and Employer's Liability Policy No. 21 WEC DS0472, (the "Hartford

Policy") from the Hartford Insurance Company ("Hartford"), effective July 1, 2005 to July 1, 2006. A copy of the Hartford Policy is attached hereto as **Exhibit "9"** and incorporated herein.

12.    The Hartford Policy afforded workers' compensation coverage for this loss, and Sinni received workers' compensation benefits from the Hartford. (*See* Ex. 4; Ex. 5, ¶11; Ex. 6, ¶¶12, 13, 15); *See also* D.E. #40, March 22, 2006 deposition of Chris Turner of Hartford. A copy of a payout log of workers' compensation benefits to Sinni by Hartford is attached hereto as **Exhibit "10"** and incorporated herein. Sinni ultimately settled her workers' compensation case for $17,250.00, minus costs. A copy of the General Settlement and Waiver of Sinni is attached hereto as **Exhibit "11"** and incorporated herein.

**C.    June 16, 2006, Notice of the Claim and Claim Investigation**

13.    Scottsdale received notice of the November 14, 2005, incident on June 16, 2006. A copy of a June 16, 2006 letter from Sinni's counsel and an Acord-Notice of Occurrence Form are attached as **Exhibit "12"** and **Exhibit "13"**, respectively, and incorporated herein. (See Ex. 12 and 13). A copy of the March 25, 2009 deposition of Doug Stutheit is attached hereto as **Exhibit "14"** and incorporated herein. (*See* Ex. 14). A copy of the March 25, 2009 deposition of Scottsdale's corporate representative, Louis Getz, is attached hereto as **Exhibit "15"** and incorporated herein. (*See* Ex. 15, pg. 83-84)

14.    On June 29, 2006, Scottsdale issued a reservation of rights letter in reference to the claim. A copy of the June 29, 2006, reservation of rights letter is attached hereto as **Exhibit "16"** and incorporated herein. (*See* Ex. 16)

15.    After notice of the November 14, 2005 incident, Scottsdale conducted investigation of the slip and fall incident involving Sinni and her claim. (*See* Ex. 14). Scottsdale's investigation determined that Sinni was an employee of Absolutely Massage, acting

5

within the course and scope of her employment with Absolutely Massage at the time of the

November 14, 2005 incident, and that Sinni had received workers' compensation benefits for he

injuries arising from the November 14, 2005 incident.  By letter dated March 5, 2007, Scottsdale

denied coverage to Absolutely Massage for the claim.  A copy of the March 5, 2007, declination

letter is attached hereto as **Exhibit "17"** and incorporated herein.  (*See* Ex. 17).

**D.**    **Underlying Lawsuit**

16.    On or about May 3, 2007, Sinni brought suit against Cullen and Absolutely

Massage in the Underlying Lawsuit [D.E. 5].   In the Underlying Complaint, Sinni asserts

separate counts of premises liability and vicarious liability against Absolutely Massage and a

count of negligence against Cullen for injuries and damages she sustained as a result of the

November 14, 2005 incident  (*See* Ex. 2).  Sinni alleges that at all times material, Absolutely

Massage "operated a business providing massage therapy" and that Cullen "was an employee of

Absolutely Massage" whose "actions...were undertaken within the scope of his employment

with...Absolutely Massage." *Id.* at ¶ 5 and 8.   Sinni further alleges that prior to the subject

incident, "Absolutely Massage erected a fence at the back or East side of the premises with a

gate in said fence" and that "Absolutely Massage was responsible for the maintenance, upkeep

and safety of said fence, gate and the surrounding area, including the wood chips/ mulch and

walkway immediately to the East of said fence in said gate." *Id.* at ¶ 9.

17.    In the Underlying Complaint, Sinni alleges that "Cullen was responsible on behalf

of...Absolutely Massage to maintain the landscaping on the Premises, including placement of and

maintenance of the wood chips or mulch on the walkway immediate to the East of the fence in

the gate...." *Id.* at ¶ 10.  Sinni also alleges that although "the grade or slope of the walkway...was

steep and when it rained [the wood chips/mulch] became extremely slippery and dangerous for

6

pedestrians", she "was advised by Cullen to park her vehicle for entrance onto the Premises" in the "parking lot to the East of the Premises on the other side of the fence and gate...." *Id.* at ¶ 12-14. Sinni allegedly "was present on the Premises as a business invitee" on the day of the subject incident when she "had walked out of the Premises through the gate...and was walking down the slope of wood chip/mulch walkway on the Premises...when she slipped on the wet wood chips/mulch (wet from a recent rain) and fell, sustaining severe injuries." *Id.* at ¶ 17 and 18.

18.     In Count I of the Underlying Complaint, Sinni alleges that "Absolutely Massage breached its duties owed to [her] to not create a dangerous condition and to keep the Premises in a reasonably safe condition. *Id.* at ¶ 23. Sinni further alleges that "Absolutely Massage breached its duties owed to [her] to give timely notice to [her] of the latent or concealed perils which where known or should have been known to...Absolutely Massage but which were unknown to [her]." *Id.* at ¶ 24. Sinni concludes that as a direct and proximate result of the carelessness and negligence of Absolutely Massage, she fell and sustained damages. *Id.* at ¶ 25.

19.     In Count II of the Underlying Complaint, Sinni alleges that Cullen breached his duties owed to her to "refrain from creating a dangerous condition" and "to warn [her] of any dangerous conditions on the Premises." *Id.* at ¶ 26, 27, 31. Sinni further alleges that "Cullen's actions creating and maintaining the wood chip/mulch walkway...were unrelated to the principle business of...Absolutely Massage in providing massage therapy and were not part of his supervisory, managerial and/or policy making duties." *Id.* at ¶ 30. As a direct and proximate result of the negligence of Cullen, Sinni allegedly fell and sustained injury. *Id.* at ¶ 32.

20.     In Count III of the Complaint, Sinni alleges that "Absolutely Massage is responsible and liable for" Cullen's "negligent acts occurred in the course and scope of his employment with . . . Absolutely Massage." *Id.* at ¶ 34.

7

**E.    Notice of the Underlying Lawsuit**

21.    Neither Cullen nor Absolutely Massage forwarded a copy of the Complaint against them to Scottsdale after they were served in May, 2007. (*See* Ex. 7 and 8). A copy of the original Complaint was not sent to Scottsdale by Absolutely Massage until February 27, 2008 through its counsel, Alfred Truesdell, Esq.  Thereafter, Mr. Truesdell requested that Scottsdale provide a defense to Cullen in the Underlying Lawsuit by letter dated April 18, 2008.  A copy of a February 8, 2008 letter, February 27, 2008, letter, and April 18, 2008 letter from Mr. Truesdell to Scottsdale are attached hereto as composite **Exhibit "18"** and incorporated herein.

22.    Scottsdale began evaluating whether it had a duty to defend or indemnify Absolutely Massage as to the Underlying Lawsuit.  A copy of the March 25, 2009, deposition of Pamela Aluas is attached hereto as **Exhibit "19"** and incorporated herein.  By letter dated March 25, 2008, Ms. Aluas of Scottsdale advised Mr. Truesdell that Scottsdale was evaluating the Complaint and would provide a determination regarding whether a defense would be afforded in the near future.  A copy of the March 25, 2008 letter from Ms. Aluas to Mr. Truesdell is attached as **Exhibit "20"** and incorporated herein.  Thereafter, after a April 2, 2008 letter from Mr. Truesdell inquiring as to Scottsdale's coverage position, by letter dated April 9, 2008, Ms. Aluas advised Mr. Truesdell that Scottsdale was referring the matter to coverage counsel.  A copy of a April 2, 2008, letter and April 9, 2008, letter between Ms. Aluas to Mr. Truesdell are attached hereto as composite **Exhibit "21"** and incorporated herein.

**F.    Insurance Policy**

23.    The Policy includes CGL Coverage for Bodily Injury and Property Damage Liability with a limit of $1 million any one occurrence/$2 million general aggregate, subject to a $2,500 deductible per claimant for bodily injury liability.   The Policy also includes E&O

8

Coverage with a limit of $1 million each claim/$2 million aggregate. (*See* Ex. 1)

   **(1)    CGL Coverage Part: Coverage A**

   24.    Coverage A of the CGL Coverage part of the Policy provides that Scottsdale will

pay those sums that the insured becomes legally obligated to pay as damages because of "bodily

injury" or "property damage" to which this insurance applies. (*See* Ex. 1).   Pursuant to the

Insuring Agreement of Coverage A, the Policy provides the following:

     **1.    Insuring Agreement**

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . .

        b.    This insurance applies to "bodily injury" and "property damage" only if

          (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; ...

          (2)    The 'bodily injury' or 'property damage' occurs during the policy period.

   25.    Under Section II-Who Is An Insured of the CGL Coverage of the Policy,

"employees" are included as insureds as follows:

        a.    Your ... "employees"... but only for acts within the scope of their employment for you or while performing duties related to the conduct of your business. However, none of these "employees" ...are "insureds" for:

          (1)    "Bodily injury" or "personal and advertising injury":

            (a)    To...a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your iness....

   26.    Pursuant to Subsection 2—Exclusions to Coverage A of the Policy, Coverage A is

subject to the following exclusions:

     **d.    Workers' Compensation and Similar Laws**

        Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e.  **Employer's Liability**

"Bodily injury" to:

(1)  An "employee" of the insured arising out of and in the course of:
    (a)  Employment by the insured; or
    (b)  Performing duties related to the conduct of the insured's business; or . . .

This exclusion applies:

(1)  Whether the insured may be liable as an employer or in any other capacity...

27.  Pursuant to the "Duties In the Event of Occurrence, Offense, Claim or Suit" under Section IV Commercial General Liability Conditions, any insured must do the following:

a.  You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim.  To the extent possible, notice should include:

(1)  How, when and where the 'occurrence' or offense took place;
(2)  The names and addresses of any injured persons and witnesses;
(3)  The nature of the location of any injury or damage arising out of an 'occurrence' or offense.

b.  If a claim is made or 'suit' is brought against any insured, you must:

(1)  Immediately record the specifics of the claim or 'suit' and the date received;
(2)  Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or 'suit' as soon as practicable.

c.  You and any other involved insured must:

(1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit';
(2)  Authorize us to obtain records and other information;
(3)  Cooperate with us in the investigation or settlement of the claim or defense against the 'suit'; and
(4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which the insurance may also apply.

d.  No insured will, except at that insured's cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent....

28.  Pursuant to the "Legal Action Against Us" under Section IV, the Policy provides:

No person or organization has a right under this Coverage Part:

(a)     To join us as a party or otherwise being us into a "suit" asking for "damages" from an insured;

(b)     To sue on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for "damages" that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**(2)      Errors and Omissions Coverage Part**

29.     The Insuring Agreement of the E&O Coverage provides the following:

**2.      Insuring Agreement**

a.      We will pay those sums that the insured becomes legally obligated to pay as "damages" as a result of an "error or omission" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages." However, we will have no duty to defend the insured against any "suit" seeking "damages" for an "error or omission" to which this insurance does not apply. We may, at our discretion, investigate any "error or omission" and settle any "claim" or "suit" that may result. . .

b.      This insurance applies to "error or omission" only if:

(1)     The "error or omission" takes place in the "coverage territory"; …

(2)     The "error or omission" occurs during the policy period.

The Policy defines "errors or omissions" as "an negligent act, error or omission while performing any services normal to the business of the insured described in the Declarations."

30.     Under Section II-Who Is An Insured of the E&O Coverage of the Policy, "your employees are insureds but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business."

31.     Pursuant to Subsection 2—Exclusions to Section I of the E&O Coverage of the Policy, the E&O Coverage is subject to the following exclusions:

b.      Any obligation of any insured under any workers' compensation, unemployment compensation, disability benefits law, Federal

11

Securities Act of 1933, Employee Retirement Income Security Act of 1974 (ERISA) or under any similar law.

\* \* \*

**k.**     Injury to:

(1)     An employee of the Insured arising out of and in the course of employment by the insured, including wrongful termination…

This exclusion applies:

(a)     Whether the insured may be liable as an employer or in any other capacity; and

(b)     To any obligation to share "damages" with or repay someone else who must pay "damages" because of the injury.

\* \* \*

**p.**     Any claims covered under the Commercial General Liability Coverage Form.

32.     Pursuant to the "Duties In the Event of an "Error or Omission," "Claim" or "Suit"" under Section IV of the E&O Coverage Part, any insured must do the following:

a.     You must see to it that we are notified as soon as practicable of an 'error or omission' which may result in a "claim.'  To the extent possible, notice should include:

(1)     How, when and where the 'error or omission' took place;

(2)     The names and addresses of any injured persons and witnesses;

(3)     The nature of the location of any injury or damage arising out of the 'error or omission'.

b.     If a 'claim' is made or 'suit' is brought against any insured, you must:

(1)     Immediately record the specifics of the 'claim' or 'suit' and the date received;

(2)     Notify us as soon as practicable.

You must see to it that we receive written notice of the 'claim' or 'suit' as soon as practicable.

c.     You and any other involved insured must:

(1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the 'claim' or 'suit';

(2)     Authorize us to obtain records and other information;

(3)     Cooperate with us in the investigation, settlement, or defense of the 'claim' or 'suit'; and

(4)     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which the insurance may also apply.

d.   No insured will, except at that insured's cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent....

33.   Pursuant to the Section IV Coverage Part Conditions of the E&O Coverage, the "Legal Action Against Us" provision of the E&O Coverage of the Policy provides:

No person or organization has a right under this Coverage Part:

(a)   To join us as a party or otherwise being us into a "suit" asking for "damages" from an insured; or

(b)   To sue on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for "damages" that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance.  An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## G.   Coblentz Agreement

34.   On May 15, 2008, Sinni, Absolutely Massage and Cullen entered into an Assignment, Settlement Agreement, and Covenant Not to Execute (the "Coblentz Agreement"). (*See* Ex. 3). Pursuant to the Coblentz Agreement, Sinni claims that she is an assignee of the rights of Absolutely Massage and Cullen against Scottsdale.  (*See* Ex. 3).  On May 21, 2008, the circuit court entered an order approving the Coblentz Agreement and entering a consent judgment in the sum of $300,000.00.  (*See* Ex. 3).

35.   On or about May 29, 2008, Pam Aluas of Scottsdale contacted Al Truesdell, Esq., counsel for Absolutely Massage and Cullen, to advise that Scottsdale intended to defend Absolutely Massage and Cullen subject to a full reservation of rights under the Policy. (*See* Ex. 19, pg. 34-35).  A copy of a June 18, 2008, letter from Jake Williams, Esq., counsel for Scottsdale, addressing the telephone call is attached hereto as **Exhibit "22."** At that time, Mr. Truesdell informed Ms. Aluas of Scottsdale that, on May 21, 2008, Absolutely Massage and Cullen entered into a Coblentz Agreement with Sinni.  *Id.* at pg. 34-35.

PD.2177410.3

36.     After Scottsdale was informed about the Coblentz Agreement, by letter dated June 18, 2008, Jay R. Sever, Esq., counsel for Scottsdale, stated Scottsdale's coverage position as to the Underlying Lawsuit.  A copy of a June 18, 2008, letter from Jay Sever, Esq, counsel for Scottsdale, is attached hereto as **Exhibit "23."**

## <u>SUMMARY JUDGMENT STANDARD</u>

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Home Ins. Co. v. Phillips*, 815 F. Supp. 1471, 1472 (S.D. Fla. 1993). When a moving party has discharged its burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Here, the parties are in agreement as to the material facts, and the coverage issues should be decided as a matter of law.

## <u>DUTY TO DEFEND AND INDEMNIFY</u>

Florida law provides that an insurer must defend its insured when the initial pleadings fairly bring the case within the scope of coverage of the Policy. *See Pioneer Nat'l Title Ins. Co. v. Fourth Commerce Props. Corp.,* 487 So. 2d 1051, 1054 (Fla. 1986).  Despite the wording in the

initial pleadings, however, an insurer "is not required to defend if it would not be bound to indemnify the insured even though the plaintiff should prevail in his action." *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 535 (Fla. 1977); *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35-36 (Fla. 4th DCA 2003). Should uncontroverted evidence place the claim outside of coverage, and the plaintiff makes no attempt to plead the fact creating coverage or suggest the existence of evidence establishing coverage, an insurer is relieved of defending. *See Underwriters at Lloyds London v. STD Enters., Inc.*, 395 F.Supp. 2d 1142, 1146 (M.D. Fla. 2005); *see Nationwide v. Keen*, 658 So. 2d 1101 (Fla. 4th DCA 1995). If an insurer does not have a duty to defend, then it does not have a duty to indemnify. *Council v. Paradigm Ins. Co.*, 133 F. Supp. 2d 1339, 1340 (M.D. Fla. 2001). Likewise, the duty to defend ceases when it is shown that there is no potential for coverage, i.e., when there is no duty to indemnify. *STD Enterps.*, 395 F.Supp. 2d at 1146. The insured bears the burden of proving the claim falls within the Policy's affirmative grant of coverage. *East Fla. Hauling, Inc. v. Lexington Ins. Co.*, 913 So. 2d 673, 678 (Fla. 3d DCA 2005).

## **ARGUMENT**

Scottsdale had no duty to defend or indemnify Absolutely Massage or Cullen in the Underlying Lawsuit because the Underlying Lawsuit does not involve "bodily injury" or "property damage" caused by an "occurrence" to which the insurance of the Policy applies or damages as a result of an "error or omission" to which the Policy applies. Even if Coverage A of the CGL Coverage or the E&O Coverage could be implicated by Sinni's claims against Absolutely Massage or Cullen, the Workers' Compensation and Similar Laws Exclusions and Employers' Liability Exclusions would preclude coverage for this loss. Further, even if the Policy could have afforded any coverage for this loss, which is denied, Absolutely Massage and

Cullen's late notice of the Underlying Lawsuit and agreement to enter into a *Coblentz* agreement and $300,000 consent judgment breached the conditions of the Policy, precluding coverage under the Policy.

**A.      CGL Coverage Part: Coverage A—Bodily Injury and Property Damage Liability**

Coverage A of the CGL Coverage of the Policy does not afford coverage, for defense of indemnity, for this loss based on its terms, conditions, limitations and exclusions.  Pursuant to the Insuring Agreement of Coverage A, Scottsdale "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." (*See* Ex. 1, CGL Coverage Form, pg. 1).  Scottsdale has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." *See id.*  For the reasons set forth below, Coverage A does not afford coverage for this loss.  Further, even if Coverage A could afford coverage for this loss (which is denied), Cullen, an employee of Absolutely Massage at all times material, is not an "insured" under the Policy for "bodily injury" to Sinni, a co-employee of Absolutely Massage, while in the course of employment of Absolutely Massage's business.

**(1)      Workers' Compensation and Similar Laws Exclusion**

The Workers' Compensation and Similar Laws Exclusion precludes coverage for this loss under the Policy.  Pursuant to the Workers' Compensation and Similar Laws Exclusion, the Policy precludes coverage for "*any obligation of the insured under a workers' compensation,* disability benefits or unemployment compensation law or any similar law."  (Emphasis added).  Florida courts have interpreted nearly identical workers' compensation exclusions without finding any ambiguity and enforced such exclusions to preclude coverage for the claims of insureds' employees arising out of or in the course of the employment where workers'

compensation benefits were required to be provided under law. *See, e.g., Indian Harbor Ins. Co. v. Williams*, 998 So. 2d 677, 679 (Fla. 4th DCA 2009); *Fla. Ins. Guar. Assoc., Inc. v. Revoredo*, 698 So. 2d 890, 891 (Fla. 3d DCA 1997); *Ron Burton Inc. v. Villwock*, 477 So. 2d 596, 599 (Fla. 4th DCA 1985); *Sunnyhill South, Inc. v. Aetna Cas. & Sur. Co.*, 289 So. 2d 772, 773 (Fla. 1st DCA 1974). Under the workers' compensation law, "workers' compensation is the exclusive remedy available to an injured employee as to any negligence on the part of that employee's employer." *Williams*, 998 So. 2d at 679. When an employee's injury arises out of the course and scope of his or her employment, workers' compensation is the exclusive remedy for the injury, and the employer is provided with immunity from any other liability for the injury. *Id.*; [D.E. #40, *see* cases therein].

Uncontroverted evidence supports that Absolutely Massage had a workers' compensation obligation to Sinni and that Sinni recovered workers' compensation benefits for her damages arising out of the subject incident. (*See* Exs. 4-6; Exs. 10-11). The plain language of the Workers' Compensation Exclusion extinguished Scottsdale's duty to defend and indemnify Absolutely Massage and Cullen for Sinni's claims and alleged damages in the Underlying Lawsuit. To hold otherwise would effectively permit Absolutely Massage to receive that which it did not buy; that is workers' compensation coverage in a comprehensive general liability policy that specifically excluded such coverage. *See Sunnyhill*, 289 So. 2d at 774. Further, the workers' compensation exclusion precludes coverage for a claim against an employee, even when the employee cannot claim immunity under Florida's Workers' Compensation Law. *Oppenheim v. Reliance Ins. Co.*, 804 F.Supp. 305, 308 (M.D. Fla. 1991) (finding that the workers' compensation exclusion bars a claim if *any* insured, whether the employer or employee, is liable under Florida's Workers' Compensation Law). The Workers' Compensation and

17

Similar Laws Exclusion precludes coverage under the CGL Coverage of the Policy for Sinni's claims against Absolutely Massage and Cullen that are the subject of the Underlying Lawsuit.

### (2)   Employer's Liability Exclusion

The Employer's Liability Exclusion also precludes coverage for this loss under the Policy.   Pursuant to the Employer's Liability Exclusion, the insurance does not cover "bodily injury" to "(1) [a]n 'employee' of the insured arising out of and in the course of: (a) [e]mployment by the insured; or (b) [p]erforming duties related to the conduct of the insured's business."   The Employer's Liability Exclusion applies "[w]hether the insured may be liable as an employer or in any other capacity."

Employer's liability exclusions have been construed for many years by Florida courts as clear, unambiguous, and enforceable to preclude coverage for the claims of insureds' employees arising out of or in the course of the employment. *See, e.g., Lincoln Ins. Co. v. Home Emergency Servs., Inc.*, 812 So. 2d 433 (Fla. 3d DCA 2002); *Woodcraft Mfg., Inc. v. Charter Oak Fire Ins. Co.*, 2009 WL 1329138 (N.D. Fla. 2009); *Aetna Comm. Ins. Co. v. Am. Sign Co.*, 687 So. 2d 834 (Fla. 2d DCA 1996); *Great Global Assurance Co. v. Shoemaker*, 599 So. 2d 1036, 1038 (Fla. 4th DCA 1992); *Nautilus Ins. Co. v. S & S Indus. Servs., Inc.*, 2007 WL 951776 (S.D. Fla. 2007); *Torres v. Southeastern Aviation (Cal.), Inc.*, 472 So. 2d 541 (Fla. 3d DCA 1985); *Greathead*, 473 So. 2d 1380.   "The obvious intent and meaning of these exclusion clauses is to relieve the insurer of liability incurred by the insured because of work connected injuries to his business...." *Griffin v. Speidel*, 179 So. 2d 569, 571 (Fla. 1965).   Again, given such intent, Florida courts have routinely held that the term "employee" includes "statutory employees" as that term is defined by Florida's Workers' Compensation Law. *Dodge v. Fid. & Cas. Co. of NY*, 424 So. 2d 39 (Fla. 5th DCA 1982); *see also Revoredo*, 698 So. 2d at 891 (holding that "[s]tatutory employees have been treated identically to actual employees in relation to [employer's liability exclusions].").

18

The phrase "or in any other capacity" has been interpreted by the Florida Second District Court of Appeal as clear, unambiguous, and enforceable to preclude coverage to for the claims of an employee against his insured supervisor. *Am. Sign*, 687 So. 2d at 835.

Sinni's injuries arose out of and were in the course of her employment by Absolutely Massage.  Florida law supports that injuries sustained by an employee coming from work are considered to have arisen out of and in the course of employment if the injuries are caused by a "special hazard" on a "normal and customary route" used by the employee as a means of exit from the work premises. *See Naranja Rock Co. v. Dawal Farms*, 74 So. 2d 282, 286 (Fla. 1954); *Kramer v. Palm Beach County*, 978. So. 2d 836 (Fla. 1st DCA 2008).  For example, an employee's injuries were consider to have arisen out of and in the course of employment where the employer exercised control over where the employee could not park and employee encountered a special hazard leading to her injuries in an effort to comply with employer rules regarding parking. *Maas Brothers v. Peo,* 498 So. 2d 657 (Fla. 1st DCA 1986).  Here, Absolutely Massage instructed its employees not to park in the front of its premises, but rather, in a location that required employees to cross a poorly maintained mulch walkway to exit work."[2] (*See* Ex. 8, pg. 16, ln. 13-15, pg. 17, ln. 11-17; Ex. 2, ¶ 10, 12-14 and 25, 27 and 31; Ex. 4, p.19, 21).  While attempting to comply with Absolutely Massage's rules regarding parking, Sinni slipped and fell on the mulch walkway. (*See* Ex. 2, ¶ 17-18; Ex. 4, p.19, 21).  Sinni's injuries therefore arose out of and were in the course of her employment by Absolutely Massage as the grade and the slope of the mulch walkway was a "special hazard" on a "normal and customary route" used by Sinni as a means of exit from Absolutely Massage's premises.

---

[2] Cullen confirmed that the mulch walkway was the normal and customary route. (*See* Ex. 8, pg. 17, ln. 11-17).

Further, the Employer's Liability Exclusion applies whether Absolutely Massage may be liable as an employer or in any other capacity, including but not limited to a premises owner. Although Florida courts have not had the occasion to address the meaning of the phrase "in any other capacity", other jurisdictions have held that the phrase encompass actions in which the employee is suing the employer in a capacity other than its employer status. *Forgues ex rel. Martine v. Heart of Texas Dodge, Inc.*, 2003 WL 21801424, 34 (Wis. App. 2003); *see also Town of Plainfield v. Select Energy Contracting, Inc.*, 2007 WL 4171603, 9 (Conn. Super. 2007); *Clinical Research Institute of S. Oregon, P.C. v. Kemper Ins. Co.*, 84 P.3d 147, 152 (Or. App. 2004). Such interpretation is consistent with well-established Florida law that provides that "[e]very provision in [a policy] should be given meaning and effect." *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979). Giving effect to every provision, the Employer's Liability Exclusion applies whether Absolutely Massage may be liable as an employer or in any other capacity.

### (3)     Breach of Conditions of the CGL Coverage Part

To the extent that the Policy were to afford coverage for this loss (which is denied), the Policy does provide coverage for this loss because Absolutely Massage and Cullen breached the Policy's "Duties In The Event of Occurrence, Offense, Claim or Suit" and "Legal Action Against Us" provisions of the CGL Coverage. Pursuant to the "Duties In the Event of Occurrence, Offense, Claim or Suit" under Section IV, the insured must provide written notice to Scottsdale of any "suit" brought against it as soon as practicable. Any insured must: "[i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit'" and "[c]ooperate with us in the investigation or settlement of the claim or defense against the 'suit'." Further, "[n]o insured will, except at that insured's cost, voluntarily make a

payment, assume any obligation, or incur any expense…without our consent." Pursuant to the "Legal Action Against Us" provision under Section IV, no person or organization has a right "[t]o join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured" or "sue on this Coverage Part unless all of its terms have been fully complied with."

Absolutely Massage did not tender or notify Scottsdale of the Underlying Lawsuit until February 2008, and Cullen did not tender the Underlying Lawsuit until April 18, 2008. Thereafter, while Scottsdale was reviewing whether the Policy would afford coverage to Absolutely Massage or Cullen for the claims in the Underlying Lawsuit, Absolutely Massage and Cullen entered into a *Coblentz* agreement and $300,000 consent judgment in May 2008. Absolutely Massage and Cullen (to the extent that Cullen could be an insured, which is denied) breached the foregoing duties of the Policy and its breach has prejudiced Scottsdale.

It is well-settled under Florida law that the insured's failure to give timely notice of a claim, in direct contravention of a policy condition, is a legal basis for the denial of recovery under the policy. *Ideal Mut. Ins. Co. v. Waldrep,* 400 So. 2d 782, 785 (Fla. 3d DCA 1981). *See also Fla. Mun. Liab. Self Insurers Program v. Mead Reinsurance Corp.*, 796 F. Supp. 509, 513 (S.D. Fla. 1992); *Boyd v. Pa. Nat'l Mut. Cas. Ins. Co.,* 195 So. 2d 259 (Fla. 4th DCA 1967). An insured's breach of notice provisions of policy gives rise to presumption of prejudice to the insurer and the insured has the burden to show that the late notice did not cause prejudice. *City Mgm't Group Corp. v. Am. Reliance Ins. Co.*, 528 So. 2d 1299 (Fla. 3d DCA 1988); *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785-86 (Fla. 3d DCA 1981); *Deese v. Hartford Accident & Indem. Co.*, 205 So. 2d 328, 331 (Fla. 1st DCA 1967); *Hartford Accident & Indem. Co. v. Mills*, 171 So. 2d 190, 195 (Fla. 1st DCA 1965); *State Farm Mut. Auto. Ins. Co. v. Ranson*, 121 So. 2d 175, 182 (Fla. 2d DCA 1960). But for the late notice and to the extent that Scottsdale had any

duty to defend Absolutely Massage or Cullen in the lawsuit (which is denied), Scottsdale could have provided a defense, further investigated the claim, and/or pursued settlement of the matter. To the extent that the Policy could afford coverage, if any, Scottsdale should be relieved of any obligations to Absolutely Massage and Cullen to defend or indemnify them in the Underlying Lawsuit due to their breach of the conditions of the Policy. *See Am. Reliance Ins. Co.*, 528 So. 2d 1299; *see Zurich Am. Ins. Co. v. Frankel Enter.*, 2008 WL 2787704 (11th Cir. Fla. 2008); *Zurich Am. Ins. Co. v. Frankel Enter., Inc.*, 509 F.Supp.2d 1303 (S.D. Fla. 2007).

**B.      E&O Coverage Part**

The E&O Coverage of the Policy does not afford coverage for this loss. Pursuant to the Insuring Agreement of Section I to the E&O Coverage of the Policy, Scottsdale "will pay those sums that the insured becomes legally obligated to pay as 'damages' as a result of an 'error or omission' to which this insurance applies." (*See* Ex. 1, E&O Coverage). Scottsdale "will have the right and duty to defend the insured against any 'suit' seeking those 'damages.'" However, Scottsdale "will have no duty to defend the insured against any 'suit' seeking 'damages' for an 'error or omission' to which this insurance does not apply." *Id.* The Policy defines "errors or omissions" as "an negligent act, error or omission while performing any services normal to the business of the insured described in the Declarations." *Id.* Under the Policy, Absolutely Massage's business is a "beauty salon." *Id.*, Declarations. Here, Sinni was not injured due to a negligent act, error or omission of Absolutely Massage while Absolutely Massage was performing beauty salon services on her. Rather, Sinni was injured while leaving work at the spa. Therefore, the E&O Coverage is not implicated by this claim. Further, even if this claim could implicate the Insuring Agreement of the E&O Coverage (which is denied), the claim would not be covered under the Policy due to the exclusions and conditions set forth below.

PD.2177410.3

(1)     **Exclusion (b)—Workers' Compensation and Similar Laws Exclusion**

To the extent that the E&O Coverage could be implicated by this loss (which is denied),

Exclusion (b) to the E&O Coverage would preclude coverage for Sinni's claim.   The E&O

Coverage is subject to exclusion (b) which provides that the insurance does not apply to injury

to "[a]ny obligation of any insured under any workers' compensation, unemployment

compensation, disability benefits law, Federal Securities Act of 1933, Employee Retirement

Income Security Act of 1974 (ERISA) or under any similar law." Although Florida courts have

not interpreted this specific exclusion, the law recognizes that exclusions to an insurance policy,

by their very nature, "[serve] to limit or diminish the scope of coverage otherwise provided in

the policy." *Coleman v. Valley Forge Ins.*, 432 So. 2d 1368, 1370-71 (Fla. 2d DCA 1983).  As

such, exclusions that are clearly stated within an policy are to be applied as written. *Id.* at 1371.

Similar to the Workers' Compensation and Similar Laws Exclusion to Coverage A, Exclusion

(b) to the E&O Coverage unambiguously precludes from coverage, *inter alia*, "[a]ny obligation

of any insured under any workers' compensation."   Given that exclusion (b) is clearly stated

within the Policy, this Court should apply the exclusion as written.  Accordingly, for the same

reasons set forth above as to the Workers' Compensation and Similar Laws Exclusion, the

Policy would not provide coverage for this loss due to the application of the exclusion (b)

(2)     **Exclusion (k)—Employer's Liability Exclusion**

To the extent that the E&O Coverage could be implicated by this loss (which is denied),

Exclusion (k) to the E&O Coverage would preclude coverage for Sinni's claim.   The E&O

Coverage is subject to exclusion (k) which provides that the insurance does not apply to injury

to "[a]n employee of the Insured arising out of and in the course of employment by the insured,

including wrongful termination."   This exclusion applies "[w]hether the insured may be liable

as an employer or in any other capacity." *See Forgues ex rel. Martine,* 2003 WL 21801424 at

34; *see also Town of Plainfield*, 2007 WL 4171603 at 9; *Clinical Research Institute of S. Oregon*, 84 P.3d at 152 (Or. App. 2004). For the same reasons set forth above as to the Employer's Liability Exclusion to Coverage A, the Policy would not provide coverage for this loss due to the application of the employer's liability exclusion.

 (3) **Exclusion (p)**

 To the extent that any claims could be covered under the Commercial General Liability Coverage Form of the Policy, the E&O Coverage, pursuant to exclusion (p), does not afford coverage for "[a]ny claims covered under the Commercial General Liability Coverage Form." Again, even though Florida courts have not interpreted this specific exclusion, this Court should apply the exclusion as written because it is clearly stated within the Policy. *See Coleman* 432 So. 2d at 1370-71. Therefore, to the extent that any claims could be covered under the CGL Coverage, the E&O Coverage does not provide coverage for this matter.

 (4) **Coverage Part Conditions of the E&O Coverage Part**

 To the extent that the E&O Coverage could be implicated by this loss (which is denied), the Policy would not provide coverage, if any, for this loss because Absolutely Massage and Cullen breached the Policy's "Duties In the Event of an "Error or Omission," "Claim" or "Suit"" and "Legal Action Against Us" provisions of the E&O Coverage. Pursuant to the "Duties In the Event of an "Error or Omission," "Claim" or "Suit"" under E&O Coverage, the insured must provide written notice to Scottsdale of any "suit" brought against it as soon as practicable. Any insured must: "[i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the 'claim' or 'suit'" and "[c]ooperate with us in the investigation, settlement, or defense of the 'claim' or 'suit'." Further, "[n]o insured will, except at that insured's cost, voluntarily make a payment, assume any obligation, or incur any

24

expense… without our consent." Pursuant to the "Legal Action Against Us" under the E&O Coverage, no person or organization has a right "[t]o join us as a party or otherwise bring us into a "suit" asking for "damages" from an insured" or "sue on this Coverage Part unless all of its terms have been fully complied with." As discussed above, Absolutely Massage did not tender or notify Scottsdale of the Underlying Lawsuit until February 2008, and Cullen did not tender the Underlying Lawsuit until April 18, 2008. Thereafter, while Scottsdale was reviewing whether the Policy would afford coverage to Absolutely Massage or Cullen for the claims in the Underlying Lawsuit, Absolutely Massage and Cullen entered into a *Coblentz* agreement and $300,000 consent judgment, and thereafter, Sinni, as an assignee, sued Scottsdale in this lawsuit. Absolutely Massage and Cullen (to the extent that Cullen could be an insured, which is denied) breached the foregoing duties of the Policy and its breach has prejudiced Scottsdale. To the extent that the Policy could afford coverage, if any, Scottsdale should be relieved of any obligations to Absolutely Massage and Cullen to defend or indemnify them in the Underlying Lawsuit due to their breach of the conditions of the Policy. *See Am. Reliance Ins. Co.*, 528 So. 2d 1299; *Zurich Am. Ins. Co.*, 2008 WL 2787704; *Zurich Am. Ins. Co.*, 509 F.Supp.2d 1303.

## CONCLUSION

For the reasons set forth herein, Scottsdale had no duty to defend or indemnify Absolutely Massage or Cullen against Sinni's claims and damages arising from the November 14, 2005, incident and that are the subject of the Underlying Lawsuit. Scottsdale's Motion for Summary Judgment on the coverage issues should be granted as a matter of law.

WHEREFORE, Scottsdale respectfully requests that this Court grant its Motion for Summary Judgment and determine that: (a) the Policy does not afford coverage, for defense or indemnity, to Absolutely Massage and Cullen for Sinni's claims and damage arising from the

PD.2177410.3

subject November 14, 2005 incident and that are the subject of the Underlying Lawsuit; (b)

Scottsdale does not have a duty to indemnify Absolutely Massage and Cullen for the $300,000

consent judgment in the Underlying Lawsuit; and (c) Scottsdale does not have an obligation to

reimburse Absolutely Massage or Cullen for its defense costs in the Underlying Lawsuit; and (d)

an award of any further relief the Court deems necessary and proper, including but not limited to,

an award of fees and costs in this action.

                              Respectfully submitted,

                              /s Julie K. Linhart
                              JULIE K. LINHART, ESQ.
                              Fla. Bar No. 0571601
                              **PHELPS DUNBAR LLP**
                              100 South Ashley Drive • Suite 1900
                              Tampa, Florida 33602-5311
                              Telephone: (813) 472-7550
                              Facsimile: (813) 472-7570
                              **Trial Counsel for Defendant/Counter-
                              Plaintiff Scottsdale Insurance Company**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on **October 2, 2009,** I filed the foregoing with the Clerk of

the Court using the CM/ECF system which will send a notice of electronic filing to the following

CM/ECF participants: **Charlie Steinberg, Esq.,** Charles R. Steinberg, P.A., 640 Brevard Ave.,

Suite 106, Cocoa, FL 32922-7849; Email: csteinberg@steinbergpa.com; Tele: (321) 637-1990;

Fax: (321) 637-1980 *(Attorney for Plaintiff Sinni)*, **Donald Van Dingenen, Esq.,** Van Dingenen,

PA, 2705 W. Fairbanks Ave., Suite 100, Winter Park, FL 32789; Email:

anthonybvd@embarq.com; Tele: (407) 629-4679; Fax: (407) 629-5217 *(Co-Counsel for Plaintiff*

*Sinni).*

                              /s Julie K. Linhart
                              Attorney