MELISSA J. SINNI,

     **Plaintiff,**

-vs-             **Case No.  6:08-cv-1787-Orl-31KRS**

SCOTTSDALE INSURANCE COMPANY,

     **Defendant.**

_____

# OPINION AND ORDER

 This matter came before the Court without oral argument upon consideration of cross-motions for summary judgment filed by Plaintiff Melissa J. Sinni ("Plaintiff") and Defendant Scottsdale Insurance Company ("Scottsdale") and the parties' respective responses thereto (*see* Docs. 51, 53, 55 and 56).

## I.  Overview

 This insurance dispute arises out of a slip-and-fall suit that culminated in a *Coblentz* agreement.[1]  On May 3, 2007, Plaintiff sued Aaron P. Cullen and Absolutely Massage, Inc. (collectively, the "underlying defendants") in state court, alleging, *inter alia*, that she slipped and fell on a wet mulch walkway while leaving the underlying defendants' premises (*see generally*

_____

[1]In certain circumstances, where an insurer has wrongfully refused to defend its insured and there is coverage under the policy, the insurer may be bound by the terms of a negotiated final consent judgment entered against its insured.  *See generally Coblentz v. Am. Sur. Co. of N.Y.*, 416 F.2d 1059 (5th Cir. 1969) and its progeny.

Doc. 2-2).[2]  Count I of the Complaint asserted a claim for premises liability against Absolutely

Massage, Inc. (Doc. 2-2, ¶¶ 20 - 25).  Count II asserted that Absolutely Massage, Inc.'s general

manager, Cullen, was negligent in maintaining Absolutely Massage, Inc.'s premises (Doc. 2-2, ¶¶

10 and 26 - 32).  Count III asserted a negligence claim against Absolutely Massage, Inc. predicated

on respondeat superior and Cullen's negligence (Doc. 2-2, ¶¶ 33 - 35).

Approximately one year after filing suit, Plaintiff resolved all of her claims against the

underlying defendants by entering into an "Assignment, Settlement Agreement and Covenant Not

to Execute" (Doc. 17-43).  Pursuant to the settlement agreement, Plaintiff and the underlying

defendants agreed to the entry of a $300,000 judgment in favor of Plaintiff and against the

underlying defendants (Doc. 17-44).  They further agreed, however, that Plaintiff would not

attempt to record or execute against the judgment (Doc. 17-44).  Instead, the underlying defendants

assigned all rights in their commercial general liability (CGL) policy to Plaintiff so that she could

enforce the judgment against the underlying defendants' insurance carrier:  Scottsdale (Doc. 17-

44).

On May 21, 2008, the state court approved and entered the settlement agreement as a

consent judgment (Doc. 18-2).  Plaintiff thereafter filed an "amended"[3] complaint, seeking to

_____

[2]Although omitted from her Complaint, as discussed further, *infra*, it is undisputed that
Plaintiff's employer was Absolutely Massage, Inc.; that Plaintiff's slip-and-fall occurred on her
employer's premises while she was attempting to walk to her car after leaving work; and that Plaintiff
received workers' compensation benefits for her slip-and-fall injuries.

[3]Although the new complaint was styled as an "Amended Complaint" and was ostensibly
brought against Aaron P. Cullen, Absolutely Massage, Inc. and Scottsdale, it does not contain any of
the former counts asserted against the underlying defendants  (or for that matter, any claims
whatsoever against the underlying defendants) (Doc. 17-46).  Instead, Plaintiff simply alleged that she
was "entitled to bring this action against SCOTTSDALE" to collect on the consent judgment entered

-2-

enforce the consent judgment against Scottsdale (*see* Docs. 17-46 and 31-3).  Scottsdale timely

removed the case to this Court (Doc. 19).

The issue now before the Court is whether there was coverage for Plaintiff's claims in the

state court action under the CGL policy that Scottsdale issued to the underlying defendants.[4]  The

Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (Doc. 19 at 3) and the parties

agree that Florida substantive law is controlling.

## II.  Applicable Law

### A.  Summary Judgment

A party is entitled to summary judgment when it can show that there is no genuine

issue as to any material fact.  FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d

454, 458 (11th Cir. 1994).  Which facts are material depends on the substantive law applicable to

the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The moving party bears the

burden of showing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v.*

*Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003).  In determining

whether the moving party has satisfied its burden, the court considers all inferences drawn from

the underlying facts in a light most favorable to the party opposing the motion, and resolves all

reasonable doubts against the moving party.  *Anderson*, 477 U.S. at 255.

---

by the state court (Doc. 17-46, ¶ 10).  Consequently, the Court dismissed Cullen and Absolutely
Massage, Inc. (Doc. 42).

[4]On August 17, 2009, the Court granted the parties' Agreed Motion to Bifurcate and directed
the parties to file dispositive motions on the issue of coverage by no later than October 30, 2009 (Doc.
50).  Those motions became ripe on November 2, 2009.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

With respect to determining insurance coverage issues, summary judgment is generally appropriate inasmuch as the construction and legal effect of a written contract are matters of law to be determined by the Court. *See*, *e.g.*, *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1358 (M.D. Fla. 2001) ("Summary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely upon the applicability of the insurance policy, the construction and effect of which is a matter of law.") (citations omitted).

**B.  Insurance**

In Florida, an insurer's duty to defend is distinct from, and broader than, the duty to indemnify. *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402,

1405 (11th Cir. 1993) (citing *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813-14 (Fla. 1st DCA 1985)). The duty to defend is determined by examining the allegations in the underlying complaint against the insured. *Id.* (citing *Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc.*, 358 So. 2d 533, 536 (Fla. 1977)); *see also State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1077 n. 3 (Fla. 1998). The insurer must defend when the complaint alleges facts that fairly and potentially bring the suit within coverage. *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442-43 (Fla. 2005). The allegations in the complaint control even when the actual facts are inconsistent with the allegations in the complaint. *Id.* at 443. Furthermore, once a court finds that there is a duty to defend, the duty will continue "even though it is ultimately determined that the alleged cause of action is groundless and no liability is found within the policy provisions defining coverage." *Baron Oil Co.*, 470 So. 2d at 814. In exceptionally rare cases, however, where the complaint omits a reference to an uncontroverted fact that, if pled, would have clearly placed the claim outside the scope of coverage, equity may relieve an insurer from its duty to defend. *See Underwriters at Lloyds London v. STD Enters., Inc.*, 395 F. Supp. 2d 1142 (M.D. Fla. 2005) [hereinafter "*Underwriters*"]; *Nationwide Mut. Fire Ins. Co. v. Keen*, 658 So. 2d 1101 (Fla. 4th DCA 1995) [hereinafter "*Keen*"]; *but see First Specialty Ins. Corp. v. 633 Partners, Ltd.*, 300 F. App'x 777, 786 (11th Cir. 2008) (suggesting that, unless it is "manifestly obvious" to the parties that the actual facts put the plaintiff's claims outside the scope of coverage, *Underwriters* and *Keen* should be regarded as aberrations) (citations omitted) (unpublished).[5]

---

[5]Pursuant to 11th Cir. R. 36-2, "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."

An insurer's duty to indemnify is narrower than its duty to defend and must be determined by analyzing the policy coverages in light of the actual facts in the underlying case. *CTC Dev. Corp.*, 720 So. 2d at 1077 n. 3 (citing *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th DCA 1996)); *see also*, *e.g.*, *Auto Owners Ins. Co. v. Travelers Cas. & Sur. Co.*, 227 F. Supp. 2d 1248, 1258 (M.D. Fla. 2002). In construing insurance policies, courts should read the policy as a whole, endeavoring to give every provision its full meaning and operative effect. *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007) (citation). Exclusionary clauses are typically read strictly and in a manner that affords the insured the broadest possible coverage. *Indian Harbor Ins. Co. v. Williams*, 998 So. 2d 677, 678 (Fla. 4th DCA 2009).

## C. *Coblentz* Agreements

In Florida, a party seeking to recover under a *Coblentz* agreement must prove: (1) coverage; (2) a wrongful refusal to defend; and (3) that the settlement was objectively reasonable and made in good faith. *Chomat v. N. Ins. Co. of N.Y.*, 919 So. 2d 535, 537 (Fla. 3d DCA 2006) (quoting *Quintana v. Barad*, 528 So. 2d 1300, 1301 n. 1 (Fla. 3d DCA 1988) (internal citation omitted)); *see also*, *e.g.*, *Shook v. Allstate Ins. Co.*, 498 So. 2d 498 (Fla. 4th DCA 1986). The party seeking to recover has the initial burden of proving that its underlying claim against the insured was within the coverage of the policy. *See*, *e.g.*, *Steil v. Fla. Physicians' Ins. Reciprocal*, 448 So. 2d 589, 592 (Fla. 2d DCA 1984); *Keller Indus., Inc. v. Employers Mut. Liab. Ins. Co. of Wis.*, 429 So. 2d 779, 780 (Fla. 3d DCA 1983).[6]

---

[6]Once coverage is established, the claimant must then "assume the burden of initially going forward with the production of evidence sufficient to make a prima facie showing of reasonableness and lack of bad faith, even though the ultimate burden of proof will rest upon the carrier." *Steil*, 448 So. 2d at 592. As noted, *supra*, the issues of reasonableness and good faith (or lack of bad faith) are

The determination of coverage is a condition precedent to any recovery against an insurer pursuant to a *Coblentz* agreement. *Spencer v. Assurance Co. of Am.*, 39 F.3d 1146, 1149 (11th Cir. 1994); *Farmer v. Liberty Mut. Fire Ins. Co.*, Case No. 06-61477-CIV, 2007 WL 2028842 at *3 (S.D. Fla. July 9, 2007); *Steil*, 448 So. 2d at 592. As the Eleventh Circuit has observed:

> Florida law clearly states that liability of an insurer depends upon whether the insured's claim is within the coverage of the policy. This remains true even when the insurer has unjustifiably failed to defend its insured in the underlying action. A determination of coverage, therefore, is a condition precedent to any recovery against an insurer [under a *Coblentz* agreement].

*Spencer*, 39 F.3d at 1149 (11th Cir. 1994) (citing *Steil*, 448 So. 2d at 592; *Fla. Farm Bureau Mut. Ins. Co. v. Rice*, 393 So. 2d 552 (Fla. 1st DCA 1980); and *Central Nat'l Ins. Co. v. Gonzalez*, 295 So. 2d 694, 696 (Fla. 3d DCA 1974)). Indeed, the mere entry of a consent judgment does not establish coverage and an insurer's unjustifiable failure to defend the underlying action does not estop the insurer from raising coverage issues in a subsequent suit to satisfy a consent judgment entered pursuant to a *Coblentz* agreement. *Spencer*, 39 F.3d at 1149.

Accordingly, there are two prongs to the coverage element in an action to recover under a *Coblentz* agreement: (1) the facts alleged in the underlying complaint must state a claim that fell within the coverage of the policy (i.e., that the insurer had a duty to defend); and (2) notwithstanding the allegations in the underlying complaint or stipulated facts in the consent judgment, the plaintiff's underlying claims must actually come within the coverage of the policy (i.e., on the merits, the insurer has a contractual duty to indemnify). *See*, *e.g.*, *Spencer v. Assurance Co. of Am.*, Case No. 91-50255-RV, 1993 WL 761408 (N.D. Fla. June 8, 1993)

---

not currently before the Court.

(concluding that, although insurer had a duty to defend based on the allegations in the underlying complaint, plaintiffs could not recover under *Coblentz* agreement because the actual facts were such that plaintiffs' claims did not come within the coverage of the policy), *aff'd*, 39 F.3d 1146 (11th Cir. 1994); *Farmer*, Case No. 06-61477-CIV, Order at Doc. 78-2 (S.D. Fla. July 18, 2007) (vacating 2007 WL 2028842 (S.D. Fla. July 9, 2007) and granting insurer's motion for summary judgment because allegations in underlying complaint failed to establish that insurer had a duty to defend and facts stipulated to in *Coblentz* agreement could not be used to establish coverage).

With respect to the second prong, this Court has previously observed:

> While the duty to defend is broad and must be determined solely by the allegations in the complaint against the insured, the duty to indemnify is more narrow and must be measured by the facts adduced at trial or developed through discovery . . . Therefore, notwithstanding the allegations against the insured, if the facts show that the insured's liability stems from a claim for which no coverage is provided under the policy, the insurer owes no duty of indemnification. This premise holds true even where, as here, the insured's liability was arrived at through a settlement of the action against the insured, because a settlement does not, by itself, obligate the insurer to pay for a non-covered claim. Instead, the insurer's duty to indemnify a settlement obligation must be measured by the facts . . . extant at the time the settlement was reached.

*Travelers Indem. Co. of Ill. v. Royal Oak Enters., Inc.*, 344 F. Supp. 2d 1358, 1366 (M.D. Fla. 2004) (Hodges, J.)

## III. Undisputed Facts

### A. Background

Plaintiff began working for Absolutely Massage, Inc. as a massage therapist in September of 2005 (Doc. 51-32 at 5, Sinni Dep. at 15). On November 14, 2005, Plaintiff clocked out and left Absolutely Massage, Inc.'s building (Doc. 51-32 at 6, Sinni Dep. at 18). However, as Plaintiff attempted to proceed through a gate that led to an adjacent parking lot in which she had parked her

car,[7] she slipped and fell on a pile of wet mulch located on her employer's premises (Doc. 51-32 at 6, Sinni Dep. at 18).[8]

As a result of her slip-and-fall injuries,[9] Plaintiff filed a workers' compensation claim[10] and, as early as December 2, 2005, began receiving payments from Absolutely Massage, Inc.'s

---

[7]Absolutely Massage, Inc. instructed Plaintiff and other employees to park their cars in the parking lot adjacent to the gate at the back of its premises (Doc. 51-32 at 6, Sinni Dep. at 19); (Doc. 53-13 at 17, Cullen Dep. at 16-17). Furthermore, employees would regularly exit through the back of the premises and traverse the path that led through the gate where Plaintiff slipped and fell (Doc. 53-13 at 17, Cullen Dep. at 17).

[8]It is undisputed that Plaintiff's fall occurred on Absolutely Massage, Inc.'s property (Doc. 51-32 at 6, Sinni Dep. at 19). In addition to Plaintiff's deposition testimony, the tort claims upon which the consent judgment was entered were each predicated on the fact that Plaintiff fell on Absolutely Massage, Inc.'s property (Doc. 2, ¶¶ 17 - 18).

[9]Plaintiff testified that she was diagnosed with one or more herniated and bulging discs in her neck, and tendinitis in one of her wrists, as a result of her slip-and-fall (Doc. 51-32 at 7, Sinni Dep. at 24-25). Plaintiff also testified that, prior to her slip-and-fall, she suffered a herniated disc in her back as a result of an automobile accident for which she received $100,000 in settlement proceeds (Doc. 51-32 at 7, Sinni Dep. at 23).

[10]On January 6, 2006, Plaintiff filed her petition for workers' compensation benefits with the State of Florida's Division of Administrative Hearings, Office of the Judges of Compensation Claims. *See* Petition for Benefits filed on 1/6/2007, *available at* http://www.jcc.state.fl.us/JCC/searchJCC/, Case No. 06-000191WJC (Condry, J.) [hereinafter the "WC Petition" or "Workers' Compensation Petition"]. Plaintiff was represented by counsel in the workers' compensation proceeding (WC Petition at 1). On the portion of the form directing the claimant to provide a "Description of Work Being Performed When Injury Occurred," Plaintiff certified that she "Performs [sic] duties as a massage therapist" (WC Petition at 1). As to the "Description of Accident and Parts of Body Injured," Plaintiff certified that she "sustained neck and right wrist injuries when she fell on wet woodchips while going to the parking lot" (WC Petition at 1). Both Plaintiff and her counsel signed the Workers' Compensation Petition. In doing so, they understood and acknowledged that "ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD, OR DECEIVE ANY EMPLOYER, OR EMPLOYEE, INSURANCE COMPANY OR SELF-INSURED PROGRAM, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE OR MISLEADING INFORMATION IS GUILTY OF A FELONY OF THE THIRD DEGREE" (WC Petition at 3). The Court takes judicial notice of the Workers' Compensation Petition and other filings in Plaintiff's workers' compensation case pursuant to FED. R. EVID. 201.

workers' compensation carrier, The Hartford (Doc. 51-32 at 9, Sinni Dep. at 32; Doc. 53-16 at 8). Between December 2005 and April 2007 – i.e., prior to filing the underlying tort action – Plaintiff received nearly $18,500 in payments from The Hartford (Doc. 53-16 at 1-9). In addition to the payments that were made directly to Plaintiff, The Hartford also paid more than $10,000 to Plaintiff's medical providers (Doc. 53-16 at 10-23). Furthermore, in October 2008, Plaintiff settled her workers' compensation claim with The Hartford for a gross lump-sum payment of $20,000 (*see* Doc. 51-43).[11] As of October 2008, all of Plaintiff's medical expenses were paid for by the workers' compensation benefits that Plaintiff received in the settlement with The Hartford (Doc. 51-32 at 9 and 14, Sinni Dep. at 30 and 53).

On June 16, 2006, approximately seven months after Plaintiff had first started receiving workers' compensation benefits from The Hartford, Plaintiff's counsel sent a letter and "ACORD[12] General Liability Notice of Occurrence/Claim" directly to Scottsdale.[13] Scottsdale construed the

---

[11]The workers' compensation settlement was executed approximately five months after the state court entered the consent judgment in the underlying tort action (Doc. 18-2). However, The Hartford and Plaintiff agreed that: "This settlement agreement . . . shall not act as an election of remedies or settlement as to Ms. Sinni's civil suit against Absolutely Massage, Inc. and Aaron Cullen . . . and Ms. [sic] Sinni reserves all rights to suit against said company and individual, +/or [sic] as to assignment + [sic] suit against Scottsdale Insurance / [sic] Indemnity Co" (Doc. 51-43 at 2). On October 15, 2008, Judge Condry approved the allocation of Plaintiff's workers' compensation settlement proceeds. *See* Order Granting Motion for Approval of Allocation of Settlement Proceeds filed on 10/15/2008, *available at* http://www.jcc.state.fl.us/JCC/searchJCC/, Case No. 06-000191WJC (Condry, J.)

[12]The Association for Cooperative Operations Research and Development (ACORD) is apparently a non-profit standards organization that, *inter alia*, has developed standardized claim forms that are used in the insurance industry. *See generally* About Acord, http://www.acord.org/about.

[13]Scottsdale received the letter and "Notice of Occurrence" on or about June 22, 2008 (Doc. 53-20 at 4, Stutheit Dep. at 11).

letter and "Notice of Occurrence" as a claim, sent a reservation of rights letter to its insureds on June 29, 2006, and assigned an independent adjuster to investigate (Doc. 53-20 at 4-5, Stutheit Dep. at 11-13; Doc. 53-25). Scottsdale's investigation revealed that Plaintiff was Absolutely Massage, Inc.'s employee, that she was acting within the scope and course of her employment at the time of her slip-and-fall, and that she had been receiving workers' compensation benefits (Doc. 53-26). On March 5, 2007, Scottsdale sent a declination letter to Absolutely Massage, Inc. in which it specifically disclaimed coverage and refused to "participate in the defense or indemnification" of Plaintiff's claim due to, *inter alia*, the workers' compensation and employer's liability exclusions in its policy (Doc. 53-26 at 10). Two months later, Plaintiff filed her tort suit against Cullen and Absolutely Massage, Inc.

Although Plaintiff filed suit on May 3, 2007, according to Scottsdale, it did not learn of the litigation until February 8, 2008,[14] when counsel for Absolutely Massage, Inc., Mr. Alfred Truesdell, sent Scottsdale a letter demanding that it defend Absolutely Massage, Inc. and informing Scottsdale that his client was contemplating entering into a *Coblentz* agreement (*see generally* Doc. 53-27). On February 27, 2008, Mr. Truesdell forwarded a copy of the complaint to Scottsdale (Doc. 53-27 at 5). On March 25, 2008, Scottsdale sent a letter to Mr. Truesdell in which it acknowledged receipt of the complaint and stated: "[W]e are reviewing the complaint . . . [and] will provide you with our position with respect to coverage in the near future" (Doc. 53-29 at

---

[14]Plaintiff suggests that on May 11, 2007, her counsel sent a letter and a copy of the complaint to the independent adjuster whom Scottsdale had previously assigned to investigate Plaintiff's "Notice of Occurrence" (Doc. 51-22 at 2). There is no evidence, however, that the independent adjuster ever forwarded the complaint to Scottsdale. Indeed, the affidavit of Plaintiff's counsel that addresses whether he actually enclosed a copy of the complaint with his May 11, 2007 letter is neither signed nor notarized (*see* Doc. 51-91).

1).  On April 9, 2008, Scottsdale sent another letter to Mr. Truesdell, stating: "We have referred this matter to coverage counsel and hope to have their opinion within the next two weeks.  I will be in contact with you then to advise whether we will agree to provide a defense to Absolutely Massage" (Doc. 53-30).  On April 18, 2008, Mr. Truesdell sent another letter to Scottsdale, stating that he also represented Cullen and that Cullen demanded a defense (Doc. 53-27 at 12-13).  His letter goes on to warn: "If we do not receive written confirmation that a defense will be provided to my clients from your offices by 5:00 p.m. on April 23, 2008, we will construe that to mean that Scottsdale . . . has decided to forgo providing a defense in this matter" (Doc. 53-27 at 12-13).  When Scottsdale failed to comply with Mr. Truesdell's deadline, the underlying defendants executed the *Coblentz* agreement on May 15th, 2008 (Doc. 17-44 at 8).  The state court reduced the *Coblentz* agreement to a consent judgment on May 21, 2008.  On or about May 29, 2008, one of Scottsdale's adjusters called Mr. Truesdell and told him that Scottsdale would undertake the defense of his clients pursuant to a reservation of rights (Doc. 53-28 at 35).[15]

At no time between the filing of Plaintiff's suit against the underlying defendants and the entry of the consent judgment did Scottsdale ever explicitly refuse to provide a defense or deny coverage.  Nor, however, did it ever provide a defense.

---

[15]During that same telephone conversation, but apparently subsequent to Scottsdale's offer to defend, Mr. Truesdell supposedly told the adjuster that his clients had entered into the *Coblentz* agreement (Doc. 53-28 at 35).  Neither party has addressed the admissibility of this hearsay statement.  Even assuming, however, that the statement and purported sequence of events were true, they are irrelevant.  Accordingly, the Court has not considered or relied on this evidence.

**B. Relevant Policy Provisions**

Although the Scottsdale CGL policy contains three types of coverage, Plaintiff discusses her claims only within the context of Coverage A (Doc. 51 at 6-8).  In pertinent part, Coverage A provides:

> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .
>
> b.  This insurance applies to "bodily injury" and "property damage" only if:
>
> > (1) The "bodily injury" or "property damage" is caused by an "occurrence" . . . [and]
> >
> > (2) The "bodily injury" or "property damage" occurs during the policy period . . . .
>
> "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time . . . .
>
> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions . . . .
>
> "Suit" means a civil proceeding in which damages because of "bodily injury" . . . to which this insurance applies are alleged . . . .

(Doc. 14-2 at 8, 19 and 22).

The following exclusions are also contained in the Scottsdale policy:

This insurance does not apply to:

**d.  Workers' Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

    (a) Employment by the insured; or

    (b) Performing duties related to the conduct of the insured's business . . .

    This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity; and

    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury . . . .

(Doc. 14-2 at 9).

Finally, the Scottsdale policy provides:

**Duties In the Event of Occurrence, Offense, Claim or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable . . . .

(Doc. 14-2 at 17).

**IV. Discussion**

**A. Duty to Defend**

Scottsdale appears to concede that the allegations in Plaintiff's underlying complaint potentially brought the suit within coverage (*see* Doc. 53 at 14-15). Under the exceptional circumstances of this case, however, Scottsdale contends that it should be relieved of its duty to defend. Specifically, Scottsdale points to the deliberate omission of any reference in the underlying complaint to Plaintiff's uncontroverted receipt of workers' compensation benefits and employment status. Furthermore, Scottsdale argues that it was prejudiced by its insureds' breach of their duty to promptly forward a copy of the underlying complaint to Scottsdale until nine months after they were served and just two and half-months before the insureds entered into the *Coblentz* agreement (Doc. 53 at 17 and 20).

The Court agrees that the circumstances of this case are exceptional and that Scottsdale should be relieved of its duty to defend. As discussed in more detail, *infra*, it was manifestly obvious that the actual facts put Plaintiff's claims outside the scope of coverage. When Plaintiff filed suit, she had already applied for and was receiving workers' compensation benefits for the very slip-and-fall injuries that comprised the only basis for her underlying action. Had Plaintiff not concealed that uncontroverted fact from her complaint, her claims would clearly have been barred by workers' compensation immunity and outside the scope of coverage. Instead, after Scottsdale had received Plaintiff's "Notice of Occurrence" and denied coverage, Plaintiff decided to recast her claims and mislead the court by alleging that she was simply a "business invitee."

The insureds then kept Scottsdale in the dark for more than nine months after they were served.[16] When they finally gave Scottsdale notice of the suit, they immediately indicated that they were contemplating a *Coblentz* agreement.[17]  Less than three months later, while Scottsdale was still attempting to determine whether it had a duty to defend, the insureds executed the *Coblentz* agreement.

In addition, then, to the omission of an uncontroverted fact in the complaint that would have justified Scottsdale's denial of a defense, Scottsdale's right to assess Plaintiff's claims and exercise control over the litigation before the parties entered into the *Coblentz* agreement was significantly impaired.  Based on these exceptional circumstances, the Court concludes that Scottsdale was relieved of its duty to defend and is therefore entitled to a judgment as a matter of law that it has no obligation to reimburse Plaintiff or its insureds for any defense costs or attorneys' fees incurred in the underlying litigation.

---

[16]The policy obligated the insureds to provide notice of the claim to Scottsdale "as soon as practicable."  The insureds clearly breached this provision of the policy.

[17]It is worth noting that the parties to a *Coblentz* agreement have an incentive to move quickly in order to catch the insurer in a *Coblentz* waiver trap, as discussed, *infra*.

**B. Duty to Indemnify**

Even assuming, *arguendo*, that Scottsdale had a duty to defend, the Court concludes that Plaintiff's claims did not come within the coverage of Scottsdale's CGL policy. As the Third District Court has recognized, the standard workers' compensation and employer's liability exclusions in CGL policies such as Scottsdale's preclude coverage for Plaintiff's injuries. *Fla. Ins. Guar. Ass'n, Inc. v. Revoredo*, 698 So. 2d 890, 892 (Fla. 3d DCA 1997) ("[T]he only coverage intended [in a CGL policy], and for which the premium has been paid, is the liability of the insured to the public, as distinguished from liability to the insured's employees whether or not they are protected by the workers' compensation law").

As a threshold matter, it is well-established that workers' compensation is the sole and exclusive remedy available to a worker injured in a manner that falls within the broad scope and polices of Florida's workers' compensation statute. *Byrd v. Richardson-Greenshields Sec., Inc.*, 552 So. 2d 1099, 1100 (Fla. 1989); FLA. STAT. § 440.11 (an employer's liability to an employee "shall be exclusive and in place of all other liability, including vicarious liability . . . ."); *see also*, *e.g.*, *Eller v. Shova*, 630 So. 2d 537, 539 (Fla. 1993); *Seaboard Coast Line R.R. Co. v. Smith*, 359 So. 2d 427, 429 (Fla. 1978). Under the statute, an employer is obligated to compensate an employee for injuries "arising out of work performed in the course and the scope of employment." FLA. STAT. § 440.09(1). In keeping with the liberal construction placed on this statute, *Byrd*, 552 So. 2d at 1110, however, courts have broadly construed "arising out of" and "in the course and the scope of employment" to include claims that have only a sufficient nexus to the workplace. *See*, *e.g.*, *Perez v. Publix Supermarkets, Inc.*, 673 So. 2d 938 (Fla. 1st DCA 1996) (holding that employee who slipped and fell after clocking out and while leaving employer's business suffered

-17-

injury "arising out of work performed in the course and the scope of employment" and that employee's negligence claim was barred because workers' compensation was her exclusive remedy); *Vigliotti v. K-mart Corp.*, 680 So. 2d 466 (Fla. 1st DCA 1996) (holding that employee who clocked out and was exiting employer's premises when she slipped and fell suffered injury "in the course and the scope of employment"); *Jenkins v. Wilson*, 397 So. 2d 773 (Fla. 1st DCA 1981) (finding that employee who had clocked out and was accosted and raped while crossing alley leading to parking lot suffered an injury "arising out of" and "in the scope of" her employment).

It is undisputed that Plaintiff received significant workers' compensation benefits for the very injuries for which she subsequently sought relief in the underlying tort action. Indeed, Absolutely Massage, Inc.'s workers' compensation carrier began making payments directly to Plaintiff and her medical providers as early as December 2, 2005 and later settled Plaintiff's entire claim for a lump-sum payment. Notwithstanding these payments, Plaintiff then decided to sue her employer and fellow employee in tort for the very same injuries. While Plaintiff concealed her employment status and workers' compensation claim, it is evident that Plaintiff's injuries arose out of and in the course of her employment and that her underlying claims amounted to a workers' compensation obligation within the meaning of Scottsdale's CGL policy. *See*, *e.g.*, *Naranja Rock Co. v. Dawal Farms*, 74 So. 2d 282, 286 (Fla. 1954); *Kramer v. Palm Beach County,* 978 So. 2d 836 (Fla. 1st DCA 2008); *Perez*, 673 So. 2d at 939-940 (holding that workers' compensation was employee's exclusive remedy where slip-and-fall injuries were suffered after clocking out and while leaving employer's premises); *see also Maas Bros. v. Peo*, 498 So. 2d 657 (Fla. 1st DCA 1986).

Plaintiff, however, contends that the foregoing is of no moment (*see*, *e.g.*, Doc. 55 at 5). Because Scottsdale failed to defend its insureds, Plaintiff argues that Scottsdale waived all of its affirmative defenses, including, in particular, the defense of workers' compensation immunity. Furthermore, Plaintiff argues that the workers' compensation exclusion in Scottsdale's CGL policy – a coverage defense that is separate and apart from the affirmative defense of workers' compensation immunity – is inapposite because the consent judgment is not "an obligation under a workers' compensation law" (Doc. 55 at 5). Finally, Plaintiff argues that the employer's liability exclusion also does not apply. In support of these contentions, Plaintiff relies on *Wright v. Hartford Underwriters Ins. Co.*, 823 So. 2d 241 (Fla. 4th DCA 2002) [hereinafter *Wright*].

In *Wright*, the plaintiff suffered a workplace injury and filed a workers' compensation claim. 823 So. 2d at 241. After settling his workers' compensation claim with his employer's insurance carrier, the plaintiff then brought a tort action alleging that his fellow employee was grossly negligent and that his employer was vicariously liable for the fellow employee's negligence. *Id*. After defendants' CGL insurer (which was the same carrier that had settled the plaintiff's workers' compensation claim) refused to defend the tort action, the plaintiff and defendants entered into a *Coblentz* agreement. *Id*. at 241-42. The *Coblentz* agreement was then reduced to a consent judgment and the plaintiff sued the CGL insurer. *Id*. at 242. The trial court granted summary judgment to the insurer, ruling that the defendants in the underlying action would have been entitled to workers' compensation immunity. *Id*. In reversing, the Fourth District Court held:

> Workers' compensation immunity is a defense that [the defendants] could have raised in the [underlying action]. Because [the insurer] refused to defend its insured, it is bound by the settlement waiving the defense of workers'

> compensation immunity and may not assert that defense against [the plaintiff's] claim for policy benefits to satisfy the [consent judgment]. The insurer is now bound by the settlement and may not re-litigate the issue of liability by raising any affirmative defense that could have been raised in the [underlying action].

*Id*. at 242-43 (citing *Ahern v. Odyssey Re (London) Ltd.*, 788 So. 2d 369, 371 (Fla. 4th DCA 2001) and *Indep. Fire Ins. Co. v. Paulekas*, 633 So. 2d 1111, 1114 (Fla. 3d DCA 1994)) (footnotes omitted). In dicta, however, the Fourth District Court went on to note:

> Our disposition of the workers [sic] compensation immunity defense addresses the only basis for the trial court's grant of summary judgment. On remand the trial court will be confronted with the remaining coverage issue-e.g., whether its employer's liability policy coverage . . . extended to include [the plaintiff's underlying action]. We do point out, however, that the workers [sic] compensation *exclusion* in the [insurance policy], relied upon by the trial court below, does not apply to [the plaintiff's] civil action because the settlement judgment was not an "obligation imposed by worker's [sic] compensation" law. Rather, the judgment arose from the claims in the civil action and the settlement agreement . . . neither of which involve obligations imposed by workers [sic] compensation law.

*Id*. at 243.

On its face, the actual holding in *Wright* is that an insurer cannot avoid its duty to indemnify by raising an affirmative defense that its insured failed to raise or could have raised in the underlying action. *Id*. at 242; *see also Gallagher v. Dupont*, 918 So. 2d 342 (Fla. 5th DCA 2005) (holding, *inter alia*, that insurer which refused to defend its insured in underlying action could not raise an affirmative defense to insured's liability which could have been raised in underlying action); *Ahern*, 788 So. 2d 369 (holding that insurer in a *Coblentz* action could not contest the liability of its insured in prior underlying action). *Wright*'s holding has no bearing, however, on an insurer's ability to raise coverage defenses or exclusions that appear on the face of the policy. On the contrary, an insurer faced with a *Coblentz* action has the right to litigate its contractual duty to indemnify on the actual facts of the underlying litigation just as it would in an

-20-

action against its insured.  *See, e.g., Spencer*, 39 F.3d at 1149 (citing, *inter alia, Steil*, 448 So. 2d at 592).

When considering the effect of a *Coblentz* agreement where the insurer has breached its duty to defend, it is important to recognize the different relationships involved.  On the one hand is the relationship in tort between the underlying plaintiff and the insured defendant.  On the other hand, the insured's claim for indemnification of the tort obligation is governed by *contract*.

The insurance policy provides for coverage (indemnification) of amounts that the insured "becomes legally obligated to pay as damages because of bodily injury . . ." (Doc. 14-2 at 8).  When the insured (or its assignee) sues for indemnification, the insurer cannot obviate its contractual liability by raising affirmative defenses (e.g., the statute of limitations, comparative fault, etc.) that might have been available to its insured in the tort case.  Having wrongfully failed to defend its insured, the insurer has waived any such defenses and the underlying tort obligation has been established.

Conversely, when the insured or *Coblentz* plaintiff sues the insurer in contract for indemnification, policy exclusions may be raised as defenses, because those issues have neither been litigated nor waived.  And this is true even if these policy defenses mirror defenses (e.g., workers' compensation immunity) that could have been raised to defend the tort claim itself.  The labels attached to the defenses are irrelevant.  One defense is contractual; the other sounds in tort.  Similarly, coverage is determined by looking at the policy and the actual facts – not the labels attached to the underlying tort obligation.  Because the parties' relationship is strictly contractual at the indemnification stage, neither the insured nor a *Coblentz* plaintiff can re-write the policy to

provide benefits for non-covered injuries that have simply been cloaked in causes of action for which there superficially appears to be coverage.

To the extent that dicta in *Wright* suggests otherwise, that dicta fails to recognize this basic distinction in the relationships between the parties. The Court is therefore firmly convinced that the Florida Supreme Court would not follow *Wright* for the proposition cited to therein by Plaintiff.[18]

Even assuming, however, that the workers' compensation exclusion does not apply, the employer's liability exclusion in Scottsdale's CGL policy precludes coverage for Plaintiff's claims. According to the First District Court, the purpose of workers' compensation exclusions is to exclude coverage of "those employees protected by the workers' compensation law, whereas the language of [the employer's liability exclusion]. . . exclude[s] liability for injury to employees *generally*. Although the two may overlap to a certain degree, they are not to be read together to exclude *only* those employees protected by workers' compensation." *Greathead v. Asplundh Tree Expert Co.*, 473 So. 2d 1380, 1383 (Fla. 1st DCA 1985) (second emphasis added) (citation omitted); *see also Revoredo*, 698 So. 2d 890. Furthermore, the Florida Supreme Court has held

---

[18] While the Court is reluctant to address issues that have not been briefed by the parties, the dicta in *Wright* is also problematic on other grounds. First, in *Indian Harbor Ins. Co.*, 998 So. 2d at 679, the Fourth District Court appears to have implicitly overruled the dicta in *Wright*. Second, a rule denying insurers the opportunity to raise policy exclusions and contest their duty to indemnify on the merits – at what is likely to be the only adversarial stage in the course of otherwise non-adversarial "ligation" – could raise significant due process concerns. *See*, *e.g.*, *Hansberry v. Lee*, 311 U.S. 32, 40 (1940) (courts have a duty to examine the course of litigation and ascertain whether litigants whose rights have been adjudicated were accorded due process) (citing *W. Life Indem. Co. of Ill. v. Rupp*, 235 U.S. 261, 273 (1914)); *Scull v. State*, 569 So. 2d 1251, 1252 (Fla. 1990) ("Due process envisions a law that hears before it condemns, proceeds upon inquiry, and renders judgment only after proper consideration of issues advanced by adversarial parties")(citations omitted).

that, in the context of CGL policies, courts should read "arising out of" very broadly. *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 535-40 (Fla. 2005) (citations omitted). Thus, an employer's liability exclusion for bodily injury to an employee "arising out of and in the course of employment" encompasses claims that are potentially broader than workers' compensation obligations and may have only a limited causal relationship to employment. *See, e.g.*, *XL Ins. Am., Inc. v. Ortiz*, ___ F. Supp. 2d ___, Case No. 09-20630-CV, 2009 WL 3739072 at *10 (S.D. Fla. Nov. 6, 2009) (applying identical employer's liability exclusion in CGL policy and holding that injuries resulting from the misuse of company time, such as "horseplay" or other "tomfoolery" that may not have given rise to an obligation under Florida's workers' compensation statute, were nevertheless outside the scope of coverage).

Here, there can be no question that Plaintiff was on Absolutely Massage, Inc.'s premises not as "business invitee" but as an employee. She had just finished her workday and was on her way to the parking lot when she slipped and fell. But-for her employment and her employer's directive to use a particular egress and parking lot, her injuries would not have occurred. Irrespective, then, of whether her injuries amounted to an obligation under Florida's workers' compensation statute, the employer's liability exclusion in Scottsdale's CGL policy also precludes coverage.

Accordingly, the Court concludes that Plaintiff's injuries comprised "an obligation of the insured under a workers' compensation law" and "arose out of and in the course of her employment" by Scottsdale's insured. Therefore, the workers' compensation and employer's liability exclusions in Scottsdale's CGL policy preclude coverage and Scottsdale is entitled to a

judgment as a matter of law that it has no duty to indemnify Plaintiff or its insureds for Plaintiff's injuries or for the consent judgment entered in the underlying tort action.

### V. Conclusion

For the foregoing reasons, it is **ORDERED** that Plaintiff Melissa J. Sinni's Motion for Summary Judgment (Doc. 51) is **DENIED** and Defendant Scottsdale Insurance Company's Motion for Summary Judgment (Doc. 53) is **GRANTED**.

It is further **ORDERED** and **ADJUDGED** that the Clerk of the Court shall enter judgment in favor of Defendant, Scottsdale Insurance Company, and against Plaintiff, Melissa J. Sinni, declaring that:

1. Defendant had no duty to defend Aaron P. Cullen or Absolutely, Massage, Inc. in the state court action styled *Melissa J. Sinni v. Aaron P. Cullen and Absolutely Massage, Inc.*, Case No. 2007-CA-005165-O, Ninth Judicial Circuit, in and for Orange County, Florida, and has no duty to reimburse any party or assignee for defenses costs and attorneys' fees incurred therein; and

2. Defendant has no duty to indemnify Plaintiff, Aaron P. Cullen or Absolutely, Massage, Inc. for Plaintiff's slip-and-fall injuries of November 14, 2005 or for the consent judgment entered in the state court action styled *Melissa J. Sinni v. Aaron P. Cullen and Absolutely Massage, Inc.*, Case No. 2007-CA-005165-O, Ninth Judicial Circuit, in and for Orange County, Florida.

The Clerk of the Court is further directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 18, 2009.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE